## Wytheville.

## COUNTY OF CAMPBELL V. VOLNEY E. HOWARD AND JOHN L. LEE.

### June 15, 1922.

1. DAMAGES—*Measure of Damages—Attorney and Client—Implied Contracts—Quantum Meruit—Quantum Valebat.*—In an action by attorneys for services rendered a county in opposing annexation proceedings, the jury were directed to measure the amount of recovery by the value of the benefit derived by the county from the services in question; that is to say, the value of the services on a *quantum valebat,* instead of the value, in itself of the work done, *i. e.,* the value of the services on a *quantum meruit.*

   *Held:*   That the instruction was erroneous as to the standard of the measure of damages.

2. ASSUMPSIT—*Implied Contracts—General Rule.*—For property transferred or services rendered by one to another, the law implies a promise to pay what the thing or the property is worth. The party then recovers, to use technical language, on a *quantum meruit* or a *quantum valebat;* and the measure of damages becomes a question of evidence as to the value of the property or services. Nor can this rule be varied, except by express agreement.

3. ASSUMPSIT—*Quantum Meruit—Measure of Damages.*—When recovery is had on a *quantum meruit* for services rendered to or benefit conferred upon the defendant at his request, the measure of compensation is the value of the work done, not the benefit derived by the defendant from it; the same is true where the services or benefit are accepted by the defendant, though not originally rendered at his request.

4. ASSUMPSIT—*Implied Contracts—Quantum Meruit or Quantum Valebat—Distinction Between Contract for Services and Contract for Manufacture of an Article.*—A contract for the manufacture of chattels, or for the construction of buildings of materials furnished by a plaintiff, stand upon a different footing with respect to the measure of compensation from contracts for personal services rendered by a plaintiff at the instance of and accepted by the defendant. In the former class, the law implies the promise of the defendant to pay the value to him, on a *quantum valebat,* of the property which he has accepted, but in the latter class, where the services involved do not add to the property or wealth of the defendant, but tend

merely to save him from loss generally, in the absence of special contract, the sole measure of the recovery is the value in itself of the work done, on a *quantum meruit.*

5. ATTORNEY AND CLIENT—*Compensation—Measure of Compensation when not Fixed by the Contract.*—The measure of compensation which attorneys at law are entitled to recover for services rendered under an employment which contains no provision fixing a definite compensation, is the reasonable value of the services rendered, not in benefit to the client, but, in themselves, on a *quantum meruit.*

6. ATTORNEY AND CLIENT—*Compensation—Measure of Compensation when not Fixed by the Contract—Circumstances to be Considered.*—The circumstances to be considered in determining the compensation to be recovered by attorneys, where the contract of employment fixes no definite compensation, are—the amount and character of the services rendered; the responsibility imposed; the labor, time and trouble involved; the character and importance of the matter in which the services are rendered; the amount of the money or the value of the property to be affected; the professional skill and experience called for; the character and standing in their profession of the attorneys; and whether or not the fee is absolute or contingent.

7. ATTORNEY AND CLIENT—*Contingent Fee—Size of Fee*—An attorney may properly charge a much larger fee where it is to be contingent than where it is not so to be.

8. ATTORNEY AND CLIENT—*Compensation—Result.*—In fixing an attorney's compensation the result secured by the services of the attorney may be considered; but merely as bearing upon the consideration of the efficiency with which the services were rendered, and, in that way, upon their value on a *quantum meruit,* not from the standpoint of their value to the client.

9. ATTORNEY AND CLIENT—*Compensation—Instruction on Measure of Compensation— Quantum Meruit or Quantum Valebat — Harmless Error.*—Where in an action by attorneys for services rendered a county in opposing annexation proceedings, the jury were directed to measure the amount of recovery by the value of the benefit derived by the county from the services in question, the error was harmless where it was plain that the compensation fixed by the verdict was but a reasonable compensation on a *quantum meruit.*

10. CONTRACTS—*Contract for Attorneys' Services—Contract Prescribing Measure of Compensation—Erroneous Instructions.*—In an action by attorneys for services rendered a county, instructions permitting a recovery for services rendered under a special contract, measured in amount otherwise than by the provisions of the special contract on that subject, were erroneous. But the error was harmless where the evidence before the jury clearly established the fact that the services in question were not rendered under the special contract mentioned in the instructions but under a subsequent different employment which did not fix the measure of compensation.

11. IMPLIED CONTRACTS—*Existence of Express Contract.* — Where the parties have come to an express contract none can be implied. This rule, however, is applicable only where there is a special contract in existence which embraces the services in question and which stipulates what the compensation shall be for the services and that contract is open, *i. e.,* unperformed on the part of the person who seeks to recover upon an implied contract compensation for what he has done.

12. CONTRACTS—*Implied Contracts—Implied Contract Different from Special Contract.*—If one is in default in the performance of an existing contract obligation, he may not escape that obligation by the expedient of setting up an alleged implied contract which is different in its obligation.

13. ATTORNEY AND CLIENT—*Action for Compensation—Conflict in Instructions — Harmless Error.* —In an action by attorneys for services rendered a county in annexation proceedings, the court instructed the jury that the attorneys might recover for services rendered by them with the knowledge of the board of supervisors, and not dissented to or prohibited by it, and from which the county received benefits. It was objected that this conflicted with an instruction to the effect that the contract between plaintiffs and defendant was contained in a certain order of the board of supervisors, and that the rights of the parties should be determined according to that order.

   *Held:* That while this was true the error was harmless, the latter instruction being itself erroneous, in view of the uncontroverted evidence in the case that the services in question were not within the contemplation of the parties when the special contract was made.

14. COUNTIES—*Presentation of Attorneys' Accounts to Board of Supervisors—Affidavit—Code of 1919, Section 2759.*—In an action by attorneys for services rendered a county, the attorneys did not file with their account, as presented to the board of supervisors, an affidavit as required by section 2759, Code of 1919. But the claim was not disallowed by the board of supervisors because of the lack of such an affidavit; and upon the trial in the circuit court, under the statute on the subject (Code of 1919, section 2763), testimony under oath was introduced in evidence showing the time actually and necessarily devoted to the performance of the services charged in the account.

   *Held:* That the requirement of the affidavit under section 2759 of the Code of 1919 was not jurisdictional, and the circuit court, on the trial of the appeal from the decision of the board of supervisors, had authority to enter judgment for the attorneys notwithstanding the absence of the affidavit.

15. ATTORNEY AND CLIENT—*Illegal Contracts— Contracts of Attorneys with County—Reference to Levies as Measure of Compensation.*—A contract between attorneys and a county under which the attorneys were to oppose annexation proceedings by a city provided for a

fixed fee and a contingent fee of one-third of the taxes saved to the county. In an action by the attorneys the county objected that the contingent fee was to be paid out of the county and district levies already appropriated to other purposes, and that such payment was therefore illegal.

*Held:* That the reference to the levies in question was merely as a measure of the amount of the contingent compensation, and that section 2728 of the Code of 1919 authorized the board to make the contract so that allowance and payment of the account for services would not have been illegal. Moreover, it appeared that the services in question were not rendered under this contract.

16. ATTORNEY AND CLIENT—*Counties—Contract for Employment of Attorneys by County — Corporate Action of Board of Supervisors.*—Section 2728 of the Code of 1919, which alone authorized the employment of attorneys by a county to oppose annexation proceedings by a city, requires such employment to be made by the board of supervisors; and the board can act in such a case, so as to obligate the county, only at an authorized meeting duly held, and as a corporate body, by resolution duly adopted; and not by the action of its members separately and individually.

17. ATTORNEY AND CLIENT—*Counties—Contract for Employment of Attorneys by County — Corporate Action of Board of Supervisors — Case at Bar.*—A resolution of a board of supervisors evidenced the fact that attorneys employed by the county to oppose annexation proceedings by a city acted for the county in having an act passed by the General Assembly of Virginia. This resolution plainly recognized that the services were rendered by the attorneys as counsel for the county—that the employment of the attorneys by the county existed—which employment was a wholly different employment from and one not embraced in the original contract to oppose annexation.

*Held:* That this was a ratification, by corporate action of the board, of the unauthorized action of the Commonwealth's attorney and individual members of the board, under which employment the services in question were rendered by the attorneys, and was an acceptance of the services.

18. ATTORNEY AND CLIENT—*Counties—Contract for Employment of Attorneys by County — Corporate Action of Board of Supervisors.*—Ratification by a board of supervisors of the employment of attorneys by the Commonwealth's attorney and individual members of the board as effectually bound the county by the obligation of the employment of the attorneys as if such employment had been evidenced by resolution of the board adopted before the services were rendered.

19. ATTORNEY AND CLIENT—*Contract of Employment — Mutual Assent— Case at Bar.*—By an express contract attorneys were employed by a county to oppose annexation proceedings by a city. In the course of the proceedings the attorneys and officials of the county deemed it wise to obtain additional legislation and the attorneys performed

valuable services in obtaining this legislation. The employment of the attorneys to obtain the legislation was ratified by the board of supervisors. The board of supervisors, in a resolution in connection with the allowance of an expense account of the attorneys in obtaining this legislation, stated that the account was ordered to be paid with the understanding that the amount should be deducted from the fee of the attorneys "for defending the aforesaid suit." The county contended that this language indicated that the employment for obtaining the aforesaid legislation was under the special contract with the attorneys to defend the county in the annexation proceedings.

*Held:* It would be a strained construction to give this language this meaning, and the attorneys not being present, such *ex parte* statement did not evidence the mutual understanding of the attorneys and the county.

20. ILLEGAL CONTRACTS—*Lobbying Contracts — Section 4499 of the Code of 1919 — Case at Bar.* — Services of attorneys employed to defend annexation proceedings in obtaining legislation favorable to a county where the territory of a county is annexed to a city, are not illegal lobbying services under section 4499 of the Code of 1919, where such services consisted merely of the presentation of argument addressed to the reason of the legislature.

21. ILLEGAL CONTRACTS — *Lobbying Contracts— Section 4499 of the Code of 1919.*—Section 4499 of the Code of 1919 aims at the offense of paying money, or other compensation, to secure the passage or defeat of any measure, and was doubtless intended to apply to the use of the money in buying votes, etc.; and not to contracts with attorneys for purely professional services, such as drafting petitions, writing forth clients' claim, taking testimony, collecting facts, preparing arguments, oral or written, addresses to the legislature or its committees, with the intention to reach its reason by argument. Hence, contracts for the latter purpose are valid.

22. ILLEGAL CONTRACTS —*Lobbying Contracts—Section 4499 of the Code of 1919.*—The same principle which permits the presentation of desired legislation and its alleged merits to the legislature as a body, or to its committees, purely with the intention of reaching their reason by argument, is applicable to the like presentation to the individual members of the legislature. Hence, contracts with attorneys for services rendered to that end are not illegal.

23. ILLEGAL CONTRACTS —*Lobbying Contracts—Section 4499 of the Code of 1919.*—A contract to pay for services to be performed in the endeavor to obtain or defeat legislation by other means than the use of argument addressed to the reason of the legislators, such as, for example, for the exertion of personal or political influence apart from the appeal to reas on as applied tothe consideration of the merits or demerits of the legislation in question, is an illegal contract.

24. COUNTIES — *Board of Supervisors—Employment of Attorneys to Obtain Legislation.*— Section 2728 of the Code of 1919, which provides that

the board of supervisors shall have power to employ counsel in any matter affecting county property where the board is of opinion that such counsel is needed, confers upon the board of supervisors the authority to contract for the employment of counsel to obtain legislation in the interest of the county by the presentation of argument addressed to the reason of the legislature.

25. ACCORD AND SATISFACTION — *Services of Attorney to a County — Ex Parte Stipulation in Warrant.*— Neither at common law nor under the Virginia statute (section 5765 of the Code of 1919) was an *ex parte* stipulation in a warrant for his expenses while rendering professional services for the county evidence of an agreement on the part of an attorney to the terms of such stipulation in regard to his fee, when he was not present at the board meeting, never agreed to the stipulation, promptly repudiated its binding force upon him as soon as he received the warrant, and at once gave constructive notice thereof to the county before he presented the warrant for payment and the county paid the warrant.

26. ACCORD AND SATISFACTION — *Services of Attorney to a County — Accord Without Satisfaction — Case at Bar.*—A dispute arose as to the fee an attorney was entitled to for services rendered a county, and the attorney said to the board of supervisors, "If you will give me my thousand dollars I will get out of it and won't have anything more to do with you."

*Held:* That this constituted an accord under the Virginia statute (section 5765 of the Code of 1919), although it would not have been so at common law. But this accord consisted in the attorney's agreement to accept, not a warrant in satisfaction of all demands, but the money. And where the attorney, before the money was paid, and even before a warrant was issued, withdrew his proposition and gave express notice of such withdrawal to the board, he acted within his rights. The attorney's agreement to accept the $1,000 in full satisfaction of all of his demands was *nudum pactum.*

27. ACCORD AND SATISFACTION — *Attorneys' Services to County — Payment of Warrant.*—A resolution of a board of supervisors ordered a warrant to be issued to an attorney for $1,000 "in full compensation for" his services. The attorney on being informed of this action applied to the board for a rehearing which was granted, and upon the rejection of his claim for a larger fee at this rehearing, the attorney immediately gave notice of an appeal from the action of the board, and in writing the clerk of the board, enclosing the bond required by statute, asked the clerk to send him his warrant as soon as he could. Accordingly, the warrant was sent the attorney and paid by the county.

*Held:* That the county by the payment of the warrant to the attorney for $1,000, after notice of the terms on which he would alone have accepted it, waived a condition in the warrant as to the warrant being in full compensation for his services, and that neither under the statute, nor at common law, was there any accord and satisfaction which barred the claim of the attorney.

Error to a judgment of the Circuit Court of Campbell county on an appeal from an allowance of the board of supervisors to the defendants in error for professional services under section 2763 of the Code of 1919. Judgment for the defendants in error. The county assigns error.

*Affirmed.*

This case involves a claim of the defendants in error, Messrs. Howard and Lee, attorneys at law (hereinafter designated attorneys, or by their individual names), against the plaintiff in error, the county of Campbell (hereinafter designated the county), for the value of personal, professional services rendered by the attorneys for the county, under a contract of employment which was silent as to the amount of the compensation to be paid for such services; under which contract the attorneys claimed, upon the issues joined on the trial of the case in the court below, that they were entitled to recover at least the sum of $3,333.34 as the value of such services, upon a *quantum meruit*, or upon a *quantum valebat* basis.

The case arose in the court below upon an appeal of the attorneys from an order of the board of supervisors of the county refusing to allow them any compensation for such services. The result of the trial in the lower court was a verdict and judgment in favor of the attorneys against the county for the sum of $2,000.00, and the county alleges error.

The attorneys did not file with their account as presented to the board of supervisors any affidavit, so as to comply with the requirement of the statute (Code, section 2759), which is as follows: "Where no specific fees are allowed by law, the time actually and necessarily devoted to the performance of any

service charged in such account shall be verified by affidavit to be filed therewith." But the claim was not disallowed by the board of supervisors because of the lack of such affidavit; and upon the trial in the circuit court, under the statute on the subject (Code, section 2763), testimony under oath was introduced in evidence showing the time actually and necessarily devoted to the performance of the services charged in the account.

The record discloses much confusion in the trial of the case in the circuit court, some of which is reflected in the briefs and oral argument on the appeal, upon the subject of whether the right of recovery of the attorneys is based or rests upon one or the other of two different contracts, which will be hereinafter designated the first and second contracts, respectively, both of which were between the county and the attorneys.

The first contract was a special contract evidenced by the resolution of the board of supervisors of the county, adopted on October 20, 1919, which is as follows:

"Resolved, by the board of supervisors, that A. H. Light, Jno. L. Lee and Volney E. Howard have been and are hereby employed to represent the county of Campbell and its subdivisions and to defend their interests in the effort by the city of Lynchburg, now on foot, to extend the limits of said city by taking into its limits a part of the territory of Campbell county, said service by said attorneys to be rendered before the council of said city and its committee having in hand the proposed extension and in the court proceedings.

"It has been and is now agreed that the compensation of said attorneys to be paid by the county of Campbell shall be (1) the sum of three thousand

dollars certain fee; and (2) after the committee of said council shall have made to the council its report of the exact boundaries recommended by it to be taken into said city limits, out of the territory of this county, the said attorneys shall have and be paid by this county an additional contingent fee of one-third of all taxes saved to the county and its subdivisions within the said boundary for the year first after the line is settled, and the contingent fee in no event to exceed five thousand dollars."

It will be noted that A. H. Light, the Commonwealth's attorney of the county, was one of the parties to this contract.

The second contract was not an express contract at all, but merely a promise which the law implies on the part of the county to pay the attorneys, Lee and Howard, the reasonable value of their personal services which were lawfully rendered in the employment of them by the county in the matter of "having an act passed by the General Assembly of Virginia amending the annexation laws of the State;" the fact of such employment being evidenced by the resolution of the said board adopted May 3, 1920, which is as follows:

"Virginia—At a meeting of the board of supervisors of Campbell county, held on the third day of May, 1920.

"An account amounting to $635.66 was this day presented to the board by John L. Lee and Volney E. Howard, *counsel for this county*, in defending the annexation suit proposed to be brought by the city of Lynchburg—said account being for expenses, etc., *incurred by said attorneys* in preparing defense in this suit, and *for having an act passed by the General Assembly of Virginiä, amending the annexation laws of the*

*State*, which said account is ordered to be paid, with the understanding that the amount thereof shall be deducted from the fee of said attorneys for defending the aforesaid suit." (Italics supplied.)

The account filed before the board of supervisors was in favor of Mr. Light, as well as of Messrs. Lee and Howard, and was as follows:

"The County of Campbell,
      "To A. H. Light, Jno. L. Lee and Volney E. Howard:

"To services rendered the county of Campbell and its subdivisions in opposing and defeating the efforts of the city of Lynchburg to extend the limits of said city by taking into its limits a part of the territory of Campbell, under contract with the board of supervisors of said county for said services:

"The certain fee agreed............$ 3,000.00
"The contingent fee, and due........   5,000.00

$8,000.00"

But in the proceeding before the circuit court the attorneys, Lee and Howard, took the positions shown by the bill of particulars of their claim as asserted on the trial of the appeal from the board of supervisors, namely:

"1.   That said John L. Lee and Volney E. Howard and A. H. Light were employed by the board of supervisors of Campbell county, Va., as attorneys in, to-wit, October, 1919, to represent said county and its political subdivisions in endeavoring to defeat either entirely or so far as could be done the effort of the city of

Lynchburg to annex a part of the territory of the county of Campbell, Va., and which territory yielded annually many thousands of dollars in taxes and revenues to said county.

"2. Thereafter the said attorneys, especially the said John L. Lee and Volney E. Howard, rendered services under said contract of employment in preparing for the defense of, and resistance to, the contemplated annexation proceedings, and also in connection therewith rendered other services not expressly provided for in said contract but which were advantageous and valuable to said county in defeating said annexation proceeding, and especially highly advantageous to said county in any future attempts to annex, or take from it, any part of its territory; and all of which was done with the knowledge, assent, approval and ratification of said county, and its officers, and which last-named services, not expressly provided for in said contract, were of the value of, to-wit, $8,000.00, so that said attorneys deserved to have from said county the sum of, to-wit, $8,000.

"3. In, to-wit, the fall of the year 1920 said county paid to said three attorneys severally the sum of $1,000.00 each in payment of the certain fee of $3,000.00 specifically provided for in the contract of employment. The said A. H. Light, with the assent of said county, accepted the said sum of $1,000.00 so paid to him in full discharge of any further liability of said county to him for his services, and renounced any further claim to compensation for his services. The said Jno. L. Lee and Volney E. Howard severally accepted said sum of $1,000.00 each in payment of the aforesaid certain fee, but claimed and have continued to, and do now claim, their two-thirds interest in the contingent fee mentioned in said contract for services

rendered by them and expressly provided for therein; or in any event for their services rendered outside of the express contract and which were rendered with the assent, approval and ratification of said county and its officers, and said Jno. L. Lee and Volney E. Howard claim on a *quantum meruit* they deserve to have and receive from said county for said last-mentioned services at least, to-wit, $3,333.34.

"4. The said Jno. L. Lee and Volney E. Howard, acting under said contract of employment, expended extensive time and much labor in the preparation for the contemplated legal fight in the proposed annexation proceedings. In their study of the laws in this connection it developed that if the county should fail in the court proceedings in only partially defeating the proposed annexation the county would only be compensated by the city for school properties actually taken, and a certain proportion of the bonded indebtedness of the county, and which would result in many other public improvements which had been paid for by the county in the territory annexed not being reimbursed to the county. Accordingly said attorneys, with the knowledge, assent and subsequent ratification of the county and its officers, undertook to have the old statute with reference to annexation amended so as to provide reasonable compensation to the county for the public improvements in the county which had been constructed in the annexed territory at the expense of the county and its citizens. By the expenditure of much time, labor and skill they succeeded in procuring the amendment of this law by which the county would be compensated for all of the public improvements, within the extension, and the value of all the school buildings damaged by reason of the extension. And the services thus rendered by the

said John L. Lee and Volney E. Howard were worth at least the sum of $3,333.34.

"5. The said attorneys also and under their contract of employment repeatedly appeared before the branches of the council of the city of Lynchburg and committees thereof, in endeavoring to restrict the territory so proposed to be annexed, and gathered and procured data and information, and presented and made legal arguments for the purpose of preventing the proposed annexation of the territories of said county and in reducing and restricting such territory.

"6. By reason of the services so rendered the said city abandoned its purpose and plan of annexing any part of the territory of said county and said county has been saved the taxable values aforesaid and the incomes therefrom, and in addition has the advantage of the change in the statute law aforesaid in the event of further attempts or efforts of said city to annex any part of the territory of said county, and for the services so rendered by the said John L. Lee and Volney E. Howard and the benefit of which have been accepted by the said county they deserve to have from said county the sum of, to-wit, $3,333.34."

The county filed the following grounds of defense:

"1. That the account in suit is not such as the board of supervisors had authority to allow.

"2. That the appellants have accepted the payments made to them by the board of supervisors of said county in full compensation for their services mentioned in said claim.

"3. That the appellants cannot recover on both the express contract made in October, 1919, and on an implied contract.

"4. That the appellants cannot recover the $3,333.34 as both a contingent fee under said contract of October, 1919, and as a fee under an alleged *quantum meruit*.

"5. That no basis exists for ascertaining the amount of said contingent fee.

"6. That the contingency has not happened upon which the county's liability for said contingent fee was to arise.

"7. That the recovery sought by the appellants is not warranted by the contract of the appellee, express or implied.

"8. That performance of the county's agreement to pay said contingent fee was and is impossible.

"9. That the contract between the county and the appellants is an illegal one and the appellants have no right of recovery either on said contract or by way of *quantum meruit* for the services claimed to have been rendered by them.

"10. The basis of compensation relied on by the appellants is different from that specified in said contract of October, 1919, and in their account filed before the board of supervisors of said county.

"11. The city of Lynchburg did not set on foot any proceedings for annexing any part of the territory of the said county.

"12. If any such proceedings ever were set on foot by said city, they were not abandoned by reason of the services specified in the account of the appellants or in the bill of particulars of their claim.

"13. That the contract of the parties expressly excludes the idea of any liability resting upon the county for the appellants' services in preventing future annexation attempts by the city of Lynchburg.

"14. The supervisors of said county have never modified or consented to any modification of the alleged contract of October, 1919.

"15. The supervisors of said county had no authority

in law to contract for the rendition of services in connection with the passage or amendment of laws by the legislature."

Upon these pleadings the case proceeded to trial.

The evidence before the jury, so far as need be mentioned, showed the following uncontroverted facts:

The attorneys rendered valuable services to the county in opposing the extension of the corporate limits of the city of Lynchburg while the subject was in the hands of the committee of the council of that city, and, as has all along been admitted by the county, fully performed on their part the first contract above mentioned in so far as concerned the services they were to render in order to entitle them to the certain fee provided for in that contract.

As to the contingent fee provided for in the contract just mentioned, the committee of said council never made to the council any report of any boundaries recommended by it to be taken into the city limits out of the territory of the county—the annexation proceedings did not in fact proceed that far—so that the first contract aforesaid never in fact became operative with respect to the contingent fee therein mentioned and no obligation on the part of the attorneys to render any further services under that contract, other than those which they did render as aforesaid, ever arose.

However, while engaged in rendering the services aforesaid, the attorneys, upon examination of the statute law as it then existed upon the subject of annexation of territory of a county to a city, concluded that the statute did not provide for proper reimbursement to the county for public improvements existing in the annexed territory. The attention of the Commonwealth's attorney and of individual members of

3

the board of supervisors was called to this condition of the statute law, by the attorneys, Lee and Howard. The session of the legislature was approaching, and it was the opinion of the attorneys that an amendment of the statute on the subject, so as to make provision for larger reimbursement to counties in cases of annexation, should be obtained at that session, as a measure both just in itself and as likely to be the most efficient way to put an entire end to the annexation proceedings aforesaid then on foot on the part of the city of Lynchburg. This opinion was concurred in by the Commonwealth's attorney and most, if not all, of the individual members of the board of supervisors, and they individually directed the attorneys to proceed to carry this idea suggested by the latter into effect. Accordingly, the attorneys, promptly and with great energy and ability, set about rendering their personal and professional services in this new direction, none of which services was within the contemplation of the county, or the attorneys at the time the said first contract was entered into, or was embraced within any of its provisions.

There was, however, no meeting of the board of supervisors, as a corporate body, held for the consideration of this new subject, and no resolution of the board was adopted employing the attorneys to render any of the services which, as just mentioned, they undertook in the direction of obtaining such an amendment of the statute law as aforesaid.

Nevertheless, acting in the utmost good faith, in their zeal for the accomplishment of benefit to the county, and with the expectation that the county would deal justly with them and pay them for such services what they would be reasonably worth under the circumstances, the attorneys, without any express

contract with the county on the subject, proceeded with the new services.

They enlisted the special interest of the delegate from the county in the legislature, Mr. Hicks, and the attorney for the city of Richmond in behalf of the proposed amendment of the statute aforesaid. The latter aided in presenting the matter before the committees of the legislature. They drew, and Mr. Hicks introduced in the legislature, a bill for that purpose, known as the "Hicks Bill." Theirs were the guiding hands in advice, direction and execution of the plans to accomplish the new purpose. They were engaged for more than a month in the new work. One of the attorneys spent some twenty-one days altogether in the city of Richmond, and in trips back and forth between Lynchburg and Richmond, presenting the matter before individual members and the committees of both houses of the legislature, and otherwise pressing the passage of the bill. It does not appear that Mr. Light did any of this new work.

There was, also, express testimony introduced in behalf of the attorneys, Lee and Howard, to the effect that these services were, in themselves, reasonably worth fully as much as the amount of compensation fixed by the verdict of the jury. The county, although it had full opportunity to do so, introduced no evidence of this character in rebuttal, contenting itself with objecting and excepting to this character of evidence as immaterial.

It was in connection with the work just mentioned that the expenses, to the amount of $635.66, were incurred, which are mentioned in the resolution of the board of supervisors of May 3, 1920, above copied.

The "Hicks Bill" was enacted into law, being approved March 10, 1920, and is contained in Acts,

1920, p. 210 *et seq.* Not being an emergency act it did not go into effect until ninety days after the adjournment of the legislature, to-wit, until June 18, 1920.

Meanwhile the city of Lynchburg adopted a commission form of government, under which the old city council was to become abolished and a new council was to come into existence. This new form of government was to go into effect on September 1, 1920.

On June 10, 1920, the aforesaid committee of the city council presented its report on the subject of the proposed annexation aforesaid to the council. This report is not in evidence, but it appears from the record that it made no recommendation of any boundaries of any territory to be taken into the city limits and reached no definite conclusion touching the desirability of any annexation from the standpoint of the city.

Thereupon, on June 10, 1920, the common council, and on June 15, 1920, the board of aldermen, of the city of Lynchburg, adopted the following resolution:

"Whereas: A special committee from the common council and board of aldermen appointed to consider the question of annexation has for various reasons been unavoidably delayed in reaching definite conclusion touching the desirability from the city's standpoint of said annexation, and

"Whereas: There is now no apparent need for haste for a final decision in the premises, especially as annexation would necessitate the assumption of additional obligations by the city and possible issuance of bonds to cover same, sale of which under present financial conditions could not readily be had, and

"Whereas: Sam'l L. Rogers, director of United

States Census, has indicated that announcement of the preliminary total for the population of the city of Lynchburg will only be delayed until June 15th, and

"Whereas: The new form of government will go into effect within less than ninety days (September 1, 1920),

"Now, therefore, be it resolved: That the entire question of annexation of certain parts of Campbell county to the city of Lynchburg be referred to the incoming council for consideration and action.

"2nd. That all papers be placed in the hands of the clerk of the council."

On September 18, 1920, the new council of the city adopted the following resolution:

"It appearing expedient to this council, it is hereby resolved and ordered that the proceedings heretofore set on foot and now pending for the extension of the corporate limits of the city of Lynchburg, so as to take in a part of the present territory of Campbell county, be and the same is hereby abandoned: and the city attorney is so instructed."

On October 18, 1920, Mr. Lee and Mr. Light appeared before the board of supervisors and presented the account above copied of Messrs. Light, Lee and Howard against the county for the certain fee of $3,000.00 and for the further fee of $5,000.00—these gentlemen each claiming to be entitled to one-third of such fees. Mr. Howard was not present at this meeting of the board, and did not know that the account would be then presented. Mr. Lee testified on the subject of the presentation of the account before the board on this occasion as follows:

"I went before the board and after awhile they were kind enough to give me a hearing. I tried to be very frank with them, indeed. I told them very briefly of the work we had done and I pointed out to them the

clause in the contract which was now in some sense the matter of the fee. The contract provided that we were to have one-third of the first year's taxes or an amount equal to one-third after the committee had made this report. I said to them, 'Gentlemen, the committee has never made any report, but that is no ground for dispute, and I have been living in the county the best part of my life and we do not want to have any trouble about it, and while I am not authorized to speak for Mr. Howard, and I do not represent him, and have no right to speak for him at all, you, gentlemen, under our contract would owe us $5,000.00 contingent fee, plus the $3,000.00, which would make altogether $8,000.00.' I also said: 'If you will pay each of us $2,000.00, making a total of $6,000.00, instead of the $8,000.00, I will be perfectly satisfied with that, and while I tell you I have no right to bind Mr. Howard, I am perfectly sure that he will abide by my decision.'

"Q. Was Mr. Light present?

"A. Oh, yes, and we were discussing it and he said that he would abide by my decision; to my utter amazement, the board—I am sure they did not mean to do it—did not seem to think we had done any work and undertook to say that we had never gone into the court, and then about that time Judge Nelson made some suggestion about this matter having gone on for years, and so on and so on, and I am frank to tell you that I was mortified and disgusted. * * * I was disappointed and disgusted, and I said: 'If you will give me my thousand dollars I will get out of it and won't have anything more to do with you.' "

Mr. Lee testified that he thereupon left the meeting of the board.

Thereupon the board adopted the following resolution:

"It is ordered that a warrant for the sum of one thousand dollars be issued to Volney E. Howard, John L. Lee and A. H. Light, each in full compensation for their services in representing Campbell county in the recent move by the city of Lynchburg to annex certain territory belonging to Campbell county."

On being informed of the last named action of the board, Messrs. Lee and Howard applied to the board for a rehearing, which was granted, and was given at a meeting of the board held on November 15, 1920.

At this meeting of the board Messrs. Light, Lee and Howard were all present and it developed that Mr. Light had stated to a member of the board that he thought a fee of $1,000.00 each, to himself, and Messrs. Lee and Howard, was sufficient compensation for all services under the first contract and also for the work done in obtaining the passage of the "Hicks Bill," and Mr. Light admitted that this was true. Mr. Howard testified that when Mr. Light made this admission before the board, the following occurred: "I said to him: 'Light, why didn't you tell me so; why haven't you told me so all the time. You have been with us all the time in presenting this, and I was in your office talking to you about it this morning; why didn't you tell me so?' He never did answer that question, and that was the first time I had any intimation that he was not—he was up to that time just as eager for it as we were. But  *  *  *  when we found that he had talked to the board privately, I said: 'Well, we will mark your name off this thing, and I will put it for two-thirds of the $5,000.00, and that is why it is now two-thirds instead of all of it, and that was done in the presence of the board of supervisors.' "

At the close of this rehearing the board, on that

date, November 15, 1920, adopted the following resolution:

"John L. Lee and Volney E. Howard this day appeared before the board and asked for a rehearing on the question of their fee for representing Campbell county in the recent annexation movement by the city of Lynchburg, which said request was granted, and after hearing said Lee and Howard, Frank Nelson made a motion that the order entered at the last meeting allowing the attorneys representing Campbell county a fee of one thousand dollars each, be rescinded, but said motion not meeting with a second, was declared lost. Then M. L. Booth, Jr., made a motion that in view of the fact that two of said lawyers, namely, Jno. L. Lee and A. H. Light, having expressed themselves at the last meeting as being satisfied with the amount allowed them respectively for their services in said case, the board declined to make any further allowance to any of the attorneys in said case; which motion being seconded by H. R. Lewis was put to a vote and carried, whereupon the same was declared adopted, and the bill presented by said Lee and Howard for two-thirds of a contingent fee of $5,000.00 claimed by them was not allowed. From the action of the board in thus declining to allow said bill, the said Lee and Howard noted an appeal to the Circuit Court of Campbell county."

The attorneys, Lee and Howard, immediately gave notice of appeal from such action of the board, as the statute in such case requires, and Mr. Howard, the next day, wrote the clerk of the board, inclosing the bond required by statute to perfect such appeal, and in that letter stated: "Please   *   *   *   send my $1,000.00 warrant as soon as you can   *   *   *." That was the warrant in favor of Mr. Howard authorized

by the resolution of October 18, 1920, above copied. This warrant was accordingly then issued and sent to Mr. Howard. It bears date and reads as follows: "November 16, 1920, $1,000.00. To the treasurer of Campbell county. Pay to Volney E. Howard or order $1,000.00 out of the county funds for 1920. Fee in annexation case." This warrant was thereafter paid to Mr. Howard by the county.

Mr. Lee received a similar warrant after the appeal aforesaid had been taken and perfected as aforesaid, and thereafter that warrant was paid to Mr. Lee by the county.

On the subject of the expense account above mentioned, allowed by the resolution of the board of supervisors of May 3, 1920, above copied, and of that meeting of the board, this should be said: It appears in evidence that neither Mr. Howard nor Mr. Lee were present at that meeting, or knew of the provisions of that resolution until after the warrant for the expenses was cashed by Mr. Lee. This account was presented to the board for them by Mr. Light. Mr. Lee received the county warrant for the amount of these expenses, it being sent to him by the clerk of the board. This warrant had an addendum to it, which was as follows: "Part payment of fee in annexation case." It was received by Mr. Lee on May 20, 1920. He at once wrote to the clerk of the board as follows:

"My dear Woodson:

"I am in receipt of county warrant for $635.66. I observe, however, an endorsement on the warrant as follows:

"'Part payment of fee in annexation case.'

"I presume that you put this endorsement on the

warrant by mistake, because the amount is simply refunding to me my expenses in Richmond, and is no part of my fee, nor any part of the fee due Mr. Howard or Mr. Light.

"Of course, I know that you fully understand this. I shall have the warrant cashed, however, but only with the distinct understanding that it is no part whatever of the fee of either of us in the annexation proceedings.

"I am very much obliged to you for your kind attention to this matter."

Mr. Lee testifies further on this subject as follows:

"Q. Mr. Woodson was the clerk of the board?

"A. Yes; then I further went to Richmond again, I cannot say when, as these things do not remain in my mind, and I had a talk with Mr. Woodson and Mr. Light both and was told by them that there would be no difficulty about the board paying these expenses separate and apart from the fee and that is why I referred to Mr. Woodson. Of course, Mr. Light knew it because he was presenting the bill for collection."

The court gave the following instructions (Nos. 1, 1-a, 1-b and 2 were given at the request of the attorneys, over the objection of the county. It does not appear from the record at whose instance Nos. 3, 4, 5, 6, 7, 8 and 9 were given, but presumably they were given at the request of the county):

"1. The court instructs the jury that if they believe from the evidence that the plaintiffs, John L. Lee and Volney E. Howard, as the employed attorneys for the county of Campbell, rendered services to said county in pursuance of their employment under contract with the board of supervisors of said county as expressed in the resolution of said board, to-wit, October 20, 1919, and that through their services the said county

obtained the benefits contemplated by said employment, then the plaintiffs are entitled to be compensated for such services upon the basis of what is fair and just for such benefits as were received by said county therefrom.

"1-a. And if the jury shall further believe from the evidence that the object and purpose of said plaintiffs' employment was to prevent loss of territory and taxable values of said county, then for the services rendered by them to that end with the knowledge of said board, and not dissented to, stopped or prohibited by it, and from which said county received benefits, the plaintiffs should be compensated on the basis of what is just and fair remuneration for such benefits.

"1-b. And in determining the amount of compensation, if any, to be awarded the plaintiffs, the jury may take into consideration the extent and value of the benefits, if any, secured by the plaintiffs' services to said county and also the terms of compensation expressed in the aforesaid resolution, but the recovery in this case, should the jury find for the plaintiffs, cannot exceed $3,333.34.

"2. The court instructs the jury that if the plaintiff, Volney E. Howard, did not authorize or did not subsequently ratify what was done and said by the plaintiff, John L. Lee, at the October, 1920, meeting of the board of supervisors, then the said Howard is not precluded or affected thereby. And the court further instructs the jury that even if they believe an accord was had between the plaintiff, John L. Lee, and the board of supervisors, at the meeting of said board in October, 1920, by which the said Lee was to receive $1,000.00 in full for his services, but before said sum of $1,000.00 was received by said Lee he did, with the knowledge of said board, note an appeal from its

action in allowing him the sum of $1,000.00 as full compensation, and that said board had knowledge of said appeal, and that after and with such knowledge there was paid to said Lee the said sum of $1,000.00, this does not constitute an accord and satisfaction precluding him from asserting the balance of his claim for services; and the burden is on the party asserting accord and satisfaction to prove that when such payment was made it was accepted by said Lee in full satisfaction.

"3. The court instructs the jury that the contract between the plaintiffs and the defendant is the order of the board of supervisors of October, 1919, and that the rights of the parties should be determined according to this order, which constitutes a contract between them under the circumstances.

"4. The court instructs the jury that if they believe from the evidence that the $3,000.00 certain fee has been paid by the board of supervisors of Campbell county to Jno. L. Lee, Volney E. Howard and A. H. Light, as provided by provision one (1) of said order of October, 1919, then no further verdict can be found for the plaintiffs in this case as to the certain fee, and the jury must find for the defendant as to said certain fee.

"5. The court further instructs the jury that if they believe from the evidence that said $1,000.00 warrants were ordered to be issued to said Lee and Howard, respectively, in addition to a warrant for their expense item of $635.66 mentioned in the minutes of the supervisors' meeting of May 3, 1920, as a compromise settlement of their fee claim then in dispute, and that said Lee accepted his warrant as such a settlement, then they must find for said county so far as said Lee's part of the claim in dispute is concerned.

"6. The court instructs the jury that a fee, the liability for which arises by implication of law, as distinguished from the express contract of the parties, is not a contingent fee.

"7. The court instructs the jury that if they believe from the evidence that the plaintiffs, John L. Lee, and Volney E. Howard, accepted the warrants of the board of supervisors of Campbell county for $1,000.00 each, in full settlement for services rendered under the order of the board of supervisors of October, 1919, then they must find for the defendant.

"8. If the jury believe from the evidence that the claim of Lee and Howard is based upon the value of their services to said county, and that the sum of $1,000.00 each and expenses is a reasonable compensation to them for their services, and that said sum and expenses have been paid, they must find for the county.

"9. The court instructs the jury that the board of supervisors of Campbell county are public officers and cannot deal with the county's property as an individual can deal with his own property, but that the board of supervisors can only do such things and perform such acts as the laws authorize them to do and perform."

The following instructions were offered by the county and refused by the court:

"a. The court instructs the jury that the account which is the subject of this appeal is not such an account as the supervisors of Campbell county had a legal right to allow, and therefore the action of the said board in disallowing the same was not erroneous. Code, section 2759.

"b. The court instructs the jury that if they believe from the evidence that the claim of the plaintiffs in this case is not based upon the order of the board of

supervisors of Campbell county of October, 1919, but is based upon the amount the plaintiffs contend they deserve outside of said contract for services rendered, then the court instructs the jury that unless the account of the plaintiffs filed before said board of supervisors shows the time actually and necessarily devoted to the performance of the services charged in such account and was verified by affidavit filed therewith before the said board of supervisors from which this appeal was taken, then they must find for the defendant, as to any claim not based upon said order of October, 1919.

"c. The court futher instructs the jury that the words, 'fee in annexation case,' appearing on the warrants in favor of said Lee and Howard introduced in the evidence, mean the entire fee in said case, whether a part thereof was contracted to be paid as a certain fee and a part *thereof* as a contingent fee or not; and if the jury believe from the evidence that at the time of the entry of the order for the issuance of said warrants the claim of said Lee and Howard was disputed, and that the said Lee and Howard received payment of said warrants with said words written thereon, then they are not entitled to recover in this case, even though the jury may further believe from the evidence that said warrants were accepted under protest and after this appeal had been taken.

"d. The court further instructs the jury that if they believe from the evidence that the claim involved in this appeal was in dispute when the meeting of the board of supervisors of Campbell county of October 18, 1920, was held; that said board at said meeting ordered that a warrant for the sum of $1,000.00 be issued to said Lee and Howard, each, in full compensation for their services in representing said county in

the move by the city of Lynchburg to annex certain territory belonging to said county; that the said warrants were issued and delivered to said Lee and Howard pursuant to said order, and that said Lee and Howard received payment thereof with knowledge of said order, then the jury must find for said county, even though they may also believe from the evidence that said warrants were accepted under protest and after the taking of this appeal.

"e. The court further instructs the jury that if they believe from the evidence that the appellants, John L. Lee and Volney E. Howard, rendered the services mentioned in their testimony with the intention and expectation that they and Mr. Light were to be paid therefor a fee certain of $3,000.00 and a contingent fee not to exceed $5,000.00, said contingent fee to be based on the taxes to be saved to Campbell county and its subdivisions as the result of said services; and if the jury further believe from the evidence that said fee *certain* has been paid, then they must find for the county.

"f. The court further instructs the jury that, even though they believe from the evidence that some, or even all, of the board of supervisors and other officers of said county had knowledge of the rendition by Messrs. Lee and Howard of the services mentioned in said Lee and Howard's testimony as having been rendered in connection with the passage of the Hicks Bill by the Virginia legislature, and that said supervisors and officers as individuals acquiesced in said rendition; yet, unless the jury further believe from the evidence that such acquiescence was had by said board in session at such an authorized meeting, duly held, the said county is not bound by said acquiescence and is not liable for any fee so far as it is based on said services.

"g. The court instructs the jury that, because of the impossibility of determining whether or not the council of the city of Lynchburg would have decided to attempt to make an annexation of territory from Campbell county, even if no objection had been made thereto by said county, there is no basis for a finding that the services of said Lee and Howard were beneficial to said county in that connection and no basis for a recovery in their favor based on benefit; and if the jury believe from the evidence that the said board of supervisors intended that the liability of the county over and above the sum of $3,000.00 was to be contingent upon the benefit to said county as the result of the said Lee and Howard's services, and that the said $3,000.00 has been paid, they must find for said county."

*A. H. Light* and *John G. Haythe*, for the plaintiff in error.

*Kemp, Barksdale & Abbot*, for the defendants in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

[1] The questions presented by the assignments of error will be disposed of in their order as stated below.

1. Were instructions 1, 1-a and 1-b erroneous, in that they set up a wrong standard by which the jury were directed to measure the amount of recovery— namely, the value of the benefit derived by the county from the services in question (*i. e.*, the value of the services on a *quantum valebat*); instead of the value in itself of the work done (*i. e.*, the value of the services on a *quantum meruit*)?

The question must be answered in the affirmative.

[2, 3] As said in Sedgwick on Damages (9th ed.), sections 649 and 650: "For property transferred or services rendered by one to another, the law implies a promise to pay what the thing or the property is worth. The party then recovers, to use technical language, on a *quantum meruit* or a *quantum valebat:* and the measure of damages becomes a question of evidence as to the value of the property or services. *Nor can this rule be varied, except by express agreement.* \* \* \* When recovery is had on a *quantum meruit* for *services* rendered to or benefit conferred upon the defendant at his request, the measure of compensation is *the value of the work done.* \* \* *not the benefit derived by the defendant from it;* the same is true where the services or benefit are accepted by the defendant, though not originally rendered at his request. If the plaintiff has rendered services the measure of recovery is the value of the services, not of the product of the services." (Italics supplied).

Again, in section 664 of the same valuable work, this is said: "If a servant fully performs his contract, but the contract allows him no definite compensation, he is allowed to recover on a *quantum meruit* the value of the services performed, without regard to the amount of benefit which the principal, or master, received from them."

[4] As appears from the authorities cited for the attorneys on the question under consideration, namely, *Smith* v. *Packard*, 94 Va. 730, 27 S. E. 586; *B. & O. R. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. (55 Va.) 447; note to *Cutter* v. *Powell*, 2 Smith's Lead. Cases (5th ed.), 42; and Burks' Pl. & Pr. (2nd ed.), p. 119, *et seq.*; the instructions under consideration were based on the erroneous idea that contracts for the manu-

4

facture of chattels, or for the construction of buildings, or other structures, out of materials furnished by a plaintiff, where the finished work is accepted by the defendant, stand upon the same footing with respect to the measure of compensation, as contracts for personal services rendered by a plaintiff at the instance and request of and accepted by the defendant. There is a marked distinction between the two classes of contracts. In the former class, tangible property, consisting of the finished article, or structure, is actually transferred by the plaintiff to the defendant, the value of which, on a *quantum valebat*, is not something which is speculative, remote or contingent, but is capable of present definite ascertainment under well-settled rules of evidence. So that, in that class of cases, where the circumstances are such that the doctrine of "unjust enrichment" is applicable and because it is *ex aequo et bono* (*i. e.*, it is equitable and just), so to do, the law implies the promise of the defendant to pay the value to him, on a *quantum valebat*, of the property which he has accepted, and hence that value is used, in such case, as the measure of the recovery to which the plaintiff is entitled. Keener on Quasi Contracts, pp. 388 to 410. But where the services involved do not add to the property or wealth of the defendant, but tend merely to save him from loss of property or money which he already has, different principles are involved. And generally, in the class of cases involving only purely personal services, unattended with any actual transferring of tangible property, in the absence of special contract to the contrary, express or implied *in fact* (as distinguished from one which the law implies), the sole measure of the recovery is the value in itself of the work done, on a *quantum meruit*.

[5-8] Accordingly, we find that the settled rule, laid down by the authorities, almost if not quite unanimously, is that the measure of compensation which attorneys at law are entitled to recover for services rendered under an employment which contains no provision fixing a definite compensation, is the reasonable value of the services rendered, not in benefit to the client, but, in themselves, on a *quantum meruit;* and that the circumstances to be considered in determining the compensation to be recovered are—the amount and character of the services rendered; the responsibility imposed; the labor, time and trouble involved; the character and importance of the matter in which the services are rendered; the amount of the money or the value of the property to be affected; the professional skill and experience called for; the character and standing in their profession of the attorneys; and whether or not the fee is absolute or contingent, it being a recognized rule that an attorney may properly charge a much larger fee where it is to be contingent than where it is not so. The result secured by the services of the attorney may likewise be considered; but merely as bearing upon the consideration of the efficiency with which they were rendered, and, in that way, upon their value on a *quantum meruit*, not from the standpoint of their value to the client. 9 Cyc. 983, 994; 3 Am. & Eng. Enc. of Law (2nd ed.), pp. 419-423; *Bills* v. *Polk*, 4 Lea (72 Tenn.), 494; *People* v. *Supervisors*, 45 N. Y. 196; *Calvert* v. *Coxe*, 1 Gill (Md.), 95; *Christy* v. *Douglas*, Wright (Ohio), 485; *Stevens* v. *Ellsworth*, 95 Iowa 231, 63 N. W. 683; *Selover* v. *Bryant*, 54 Minn., 434, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. Rep. 349; *Randall* v. *Packard*, 142 N. Y. 47, 36 N. E. 823; *Stanton* v. *Embrey*, 93 U. S. 557, 23 L. Ed. 983; *Yates* v. *Robertson*, 80 Va. 475; 4 Minor's Inst. 177.

[9]   2.   Was the error in the instructions above pointed out harmful, and therefore reversible error?

This question must be answered in the negative.

There was evidence introduced before the jury in behalf of the attorneys upon the correct theory that the measure of recovery was on a *quantum meruit,* as well as upon the theory of the instructions above considered.   There was ample evidence to sustain the verdict upon the correct theory.   In view of the character and importance of the matter in which the services in question were rendered; the responsibility imposed upon the attorneys; the professional skill and experience called for, and the character and standing of the attorneys in their profession, as shown by the evidence, it is plain that the compensation fixed by the verdict and judgment under review, of $2,000.00 to both, or $1,000.00 to each of the attorneys, was but a reasonable compensation on a *quantum meruit.*

Of the compensation to which an attorney is entitled on a *quantum meruit* this is said in *People* v. *Supervisors, supra* (45 N. Y.), at p. 202: "He should be paid what his services are reasonably worth.   Not according to what they produced to his client, but what such services, in themselves considered, were reasonably worth, looking to the labor, time, talent and skill expended in the bestowal of them."

As said in *Eggleston* v. *Boardman, supra* (37 Mich.), at pp. 17 and 18: "The artist who transfers to the canvas the living likeness, destined perhaps to become immortal as a work of art, is entitled to a vastly higher compensation than he would be for spending the same time in painting buildings.   *   *   The recompense to be paid the sculptor, who conceives, molds and produces his masterpiece of form, cannot be measured

and fixed by a standard based alone upon the time spent in its production. * * The productions of the composer, the poet and the author, cannot be valued by the time apparently spent in their preparation. They are formed of a combination of ideas, which may have cost their authors years of application to complete.

"The lawyer, who in order to excel in his profession, has devoted years to preliminary studies and has spent much labor and money to thoroughly fit himself for his calling, so that he might be able to act as an advocate * * or as a counsellor to guide and direct others—to furnish them from his vast storehouse of knowledge, ripened and perfected from long experience, with such ideas and suggestions which, when carried out and followed up, would lead to success—how shall his services be estimated?

"It is very evident that the responsibility, the care, the anxiety and mental labor is much greater in a case where the amount in controversy is large, than where it is insignificant. * * * Nor is the responsibility, care and mental labor dependent alone upon the number of hours or days which may be given to the preparation and trial or argument of the case * *.

"We can see no analogy between this kind or class of work and that performed by the laborer, nor can the creditable fact that attorneys generally, where the amount in controversy is small, or their client is poor, charge and receive much less than their services may in fact have been worth, prevent their recovering reasonable compensation in proportion to the magnitude of the interests committed to their care. In fact, in all cases, the professional skill and standing of the person employed, his experience, the nature of the controversy, both in regard to the amount involved

and the character and nature of the questions raised in the case, as well as the result, must all be taken into consideration in fixing the value of the services rendered."

[10-12] 3. Were instructions 1 and 1-b erroneous in that they permitted a recovery for services rendered under a special contract, measured in amount otherwise than by the provisions of the special contract on that subject?

The question must be answered in the affirmative.

The instruction was plainly contrary to the well-settled law on the subject.

As said by Lord Kenyon, C. J., in *Cutter* v. *Powell*, 2 Smith's Lead. Cases, at p. 1217: "That where the parties have come to an express contract, none can be implied, has prevailed so long as to be reduced to an axiom in the law." To the same effect see *Grice* v. *Todd*, 120 Va. 481, 91 S. E. 609, L. R. A. 1917 B, 512; *Norfolk* v. *Norfolk County*, 120 Va. 356, 91 S. E., 820; *Burks' Pl. & Pr.* (2nd ed.), pp. 112-114.

This rule, however, is applicable only where there is a special contract in existence which embraces the services in question and which stipulates what the compensation shall be for the services and that contract is open—i. e., unperformed on the part of the person who seeks to recover upon an implied contract compensation for what he has done. The principle involved is this: If one is in default in the performance of an existing contract obligation, he may not escape that obligation by the expedient of setting up an alleged implied contract which is different in its obligation. Note to *Cutter* v. *Powell*, *supra*, p. 1226, *et seq.* In the instant case the services in question were not within the contemplation of or embraced in the special contract (i. e., the first contract aforesaid).

There was no stipulation in the special contract providing what the compensation for those services should be. And the special contract in fact never became operative beyond the services which were rendered thereunder for the certain fee therein provided for; it was by mutual consent wholly abandoned, and thus rescinded, in so far as its provisions concerned the services to be rendered for the contingent fee therein mentioned; and, hence, it could not be regarded as "open" *quoad* the attorneys.

But, it is manifest that, while theoretically erroneous, the instruction had no harmful effect upon the verdict. The evidence before the jury clearly established the fact that the services in question were not rendered under the special contract mentioned in the instructions, but under a subsequent and different employment, which however, did not fix the measure of compensation, so that, as aforesaid, that measure was fixed by the contract which the law in such case implied; and, as also in substance above stated, when tested by the application of that standard, no other proper verdict could have been rendered. The error under consideration, therefore, was not harmful.

[13] 4. Were instructions 1, 1-a, and 1-b erroneous, as in conflict with instruction 3, all given by the court?

The question must be answered in the affirmative.

But instruction No. 3 was itself erroneous, in view of the uncontroverted evidence in the case. It ignored and was directly at variance with the evidence, which, as aforesaid, was to the effect that the services in question were not within the contemplation of the parties when the special contract mentioned in the instruction was made, and were not embraced within its terms. Moreover, it was obvious from the language

of the special contract itself that such services were not embraced within its terms.

It is earnestly and ably argued in behalf of the county that the services were rendered under the special contract as substituted services, under the subsequent mutual agreement on the part of the county and the attorneys, which left in force and unaffected the provision of the special contract to the effect that nothing was owing from the county thereunder in addition to the certain fee provided for, except upon the happening of the contingency therein stipulated—namely, the making of a report by the committee of the city council recommending exact boundaries of territory to be taken into the city limits. If there had been such a mutual agreement it would, indeed, have amounted to a modification of the special contract merely in the single particular of the character of the services therein provided for, and the attorneys would find themselves thereby neatly placed in the cul-de-sac which the argument for the county provides for them. But, even if that were so, the contract under which the services were rendered would not be the original special contract aforesaid, as is announced in instruction No. 3, but that contract as modified by the mutual agreement; and, as said in 6 R. C. L., section 298, pp. 914-5; "In such case the contract must be proved partly by the written and partly by the subsequent oral contract which has thus been incorporated into and made part of the original contract." However, as the prime object of the new services was to put an end to all further action on the part of the city in the annexation proceeding, which would have had the precise effect of preventing the happening of the contingency aforesaid, the idea that the attorneys consented to the

modification of the original contract, merely in the single particular aforesaid, seems to be negatived by the very character of the new services and of the undertaking to render them. And all the evidence on the subject makes it plain, indeed, as aforesaid, that the original special contract never became further operative than as concerned the certain fee and the services to be rendered for that fee; that it was by mutual consent of the county and the attorneys wholly abandoned and considered as discharged by the services rendered thereunder for the certain fee, and by the payment by the county of such fee; so that, as also above stated, such special contract did not in fact remain open, i. e., unperformed on the part of the attorneys. 6 R. C. L., section 298, pp. 914-5; Elliott on Contracts, sections 1856, 1857, 1858, 1859, 1865.

It follows from what has been said that the erroneous conflict in the instructions under consideration was error, but harmless error.

[14]  5.  Is the requirement of section 2759 of the Code, with respect to such an account as that involved in this case (namely, that the time actually and necessarily devoted to the performance of the services shall be verified by affidavit filed with the account), jurisdictional, so that the circuit court, on the trial of the appeal, had no authority to enter the judgment under review, in the absence of the filing of such specific affidavit with the account?

The question must be answered in the negative.

Under the provisions of section 2763 of the Code, the trial in the circuit court, on the appeal from the action of the board of supervisors, was practically *de novo*. On that trial, the pleadings and evidence permitted by the statute, and which appear from the record, were sufficient to support the judgment.

This disposes of the assignments of error based on the refusal of the court to give instructions A and B asked for by the county.

[15]   6.   Did the court err in refusing to give instruction E asked for by the county?

The question must be answered in the negative.

The point urged in argument for the county in support of this instruction is that the original special contract provided that the contingent fee was to be paid out of the county and district levies. That these levies were appropriated by the Constitution and statute laws on the subject to other purposes, so that to use them for the payment of such contingent fee would be a misappropriation of such funds and therefore illegal.

The answer to this is, in the first place, that the reference in the original contract to the levies in question was merely as a measure of the amount of the contingent compensation provided by the contract for the contingent services which might be rendered thereunder. The payment was to be made, not out of the district, but out of the general county levy. Section 2728 of the Code authorized the board of supervisors to make the original special contract; and, hence, to make the account for such services chargeable against the county; so that under other sections of the Code the allowance and payment of the account for the services would not have been illegal, but lawful.

Secondly: As aforesaid, the evidence plainly shows that the services in question were not rendered under the original contract, and that the provision therein with reference to the taxes had no reference to the compensation for those services.

[16]   7.   Was the action of the court erroneous in

giving instruction 1-a and in refusing instruction F asked for by the county, in that the court thus, in substance, instructed the jury that they could imply a contract of employment of the attorneys on the part of the county without corporate action of the board of supervisors on the subject, evidenced by resolution adopted by such board?

The question must be answered in the affirmative.

The statute (section 2728 of the Code) under which such an employment is alone authorized so as to render the county chargeable for the services in question, requires the employment to be made by the board of supervisors; and the board can act in such a case, so as to obligate the county, only at authorized meetings duly held, and as a corporate body, by resolution duly adopted; and not by the action of its members separately and individually. *Lynchburg* v. *Amherst County*, 115 Va. 600, 80 S. E. 117; *Manly* v. *Broaddus*, 94 Va. at p. 552, 27 S. E. 438; 2 Dillon on Mun. Corp. (5th ed.), sections 501, 793, 794, 795; 1 Mechem on Agency, section 763. There are cases which constitute exceptions to the general rule requiring the corporate action above mentioned, in order to bind the municipality or county; but, in view of the fact that there was such corporate action in the instant case constituting evidence of the fact of the employment under which the services were rendered, it is unnecessary for us to here distinguish the exceptional cases.

[17, 18] By the resolution of the board of supervisors adopted on May 3, 1920, the fact that the attorneys acted as "counsel for (the) county (in) * * * having an act passed by the General Assembly of Virginia" (the "Hicks' Bill"), was evidenced. This resolution plainly recognized that the services touching this act were rendered by the attorneys as counsel for

the county; that the employment of the attorneys by the county existed in such matter, which employment as we have seen was a wholly different employment from and one not embraced in the aforesaid first contract. That was a ratification, by corporate action of the board, of the preceding unauthorized action of the Commonwealth's attorney and individual members of the board, under which employment the services in question were rendered by the attorneys, Lee and Howard, and was an acceptance of the services as having been rendered for the county, under such employment. This as effectually bound the county by the obligation of the employment of the attorneys as if such employment had been evidenced by resolution of the board adopted before the services were rendered. 2 Dillon on Mun. Corp. (5th ed.), sections 797, 798, 799, and authorities cited in the notes; 11 Cyc. 478; 15 C. J. section 250, p. 554.

Therefore the action of the court under consideration, though erroneous, was harmless error.

[19]   8.  It is urged on the part of the county that the resolution of May 3, 1920, contains qualifying language which evidences that the employment just referred to was under the original special contract aforesaid. Concerning that position this will be observed.

The qualifying language referred to, contained in the resolution just mentioned, is used in connection with the allowance of the account for the expenses mentioned, and states that "said account is ordered to be paid, with the understanding that the amount shall be deducted from the fee of said attorneys for defending the aforesaid suit." Upon its face it has no reference to the terms of the employment under which the services were rendered in connection with the

"Hicks Bill," i. e., to any "understanding" with which those services were rendered existing at the time of the service. It is a subsequent "understanding" which, manifestly, the board seeks to attach to the acceptance by the attorneys of the money to be thereafter paid under the resolution, and has to do with the fee on which the expenses were to be credited, *prima facie* the certain fee provided for in the original contract, and not the unfixed compensation for the services rendered in having the "Hicks Bill" passed. It would be a most strained construction to give this language the meaning that the latter services were rendered with the understanding mentioned; and certainly, in view of the fact that neither of the attorneys, Lee or Howard, were present or knew of the contents of the resolution when it was adopted, such *ex parte* statement on the part of the county cannot be given the construction, that it evidences what was the mutual understanding of the attorneys, as well as of the county, under which these services were rendered.

9. Did the court err in refusing Instruction G asked for by the county?

This question must be answered in the negative.

As we have seen above, the benefit to the county was not the proper measure of recovery in such a case as this. Hence, Instruction G on that subject was not a proper instruction.

[20, 21] 10. Were the services of the attorneys in connection with the passage of the "Hicks Bill" lobbying services which were illegal under section 4499 of the Code, so that the law will not imply a promise to pay therefor?

The question must be answered in the negative.

As held in *Yates* v. *Robertson, supra* (80 Va. 475), this

statute "aims at the offense of paying money, or other compensation, to secure the passage or defeat of any measure, and was doubtless intended to apply to the use of the money in buying votes, etc.; and not to contracts with attorneys for purely professional services, such as drafting petitions, writing forth client's claim, taking testimony, collecting facts, preparing arguments, oral or written, addresses to the legislature or its committees, with the intention to reach its reason by argument. Hence, contracts for the latter purpose are valid."

The only evidence of the services of the attorneys appearing from the record, which it is claimed by the county would have rendered a contract therefor illegal, is the following:

That one of the attorneys interviewed, outside of the committee room, individual members of the legislature, and especially members of the committees which would have to consider and report upon the "Hicks Bill," merely for the purpose of having them understand the merits of the bill and to reach their reason by argument.

[22] We are of opinion that there was nothing illegal or improper in the conduct mentioned. The same principle which permits the presentation of desired legislation and its alleged merits to the legislature as a body, or to its committees, purely with the intention of reaching their reason by argument, is applicable to the like presentation to the individual members of the legislature. Hence, contracts with attorneys for services rendered to that end are not illegal.

[23] The authorities very generally hold that a contract to pay for services to be performed in the endeavor to obtain or defeat legislation by other

means than the use of argument addressed to the reason of the legislators, such as, for example, for the exertion of personal or political influence apart from the appeal to reason as applied to the consideration of the merits or demerits of the legislation in question, is an illegal contract. *Trist* v. *Child*, 21 Wall. 441, 22 L. Ed. 623; *Earle* v. *Myers*, 207 U. S. 244, 28 Sup. Ct. 86, 52 L. Ed. 191; *Houlton* v. *Nichol*, 93 Wis. 393, 67 N. W. 715, 33 L. R. A. 166, 57 Am. St. Rep. 928; note L. R. A. 1917 B, 368, *et seq.; Stroemer* v. *Van Orsdel*, 74 Neb. 132, 103 N. W. 1053, 107 N. W. 125, 121 Am. St. Rep. 728; note in 66 Am. St. Rep. 506-7. As, however, as aforesaid, the contract in the case in judgment was merely for services consisting of the presentation of argument addressed to the reason of the legislators, the present case does not fall within such holding.

There are cases which hold that contracts of an attorney for lobbying services of any character whatsoever are illegal—2 R. C. L., p. 1041. But by the great weight of authority the distinction referred to in the paragraph next above is recognized, and such contracts as embrace merely services which appeal to the reason are held to be valid.

[24] There are also cases which hold that without legislative authority municipalities and counties may not use the public funds to pay for lobbying services of any character. *Richardson* v. *Scotts Bluff County*, 59 Neb. 400, 81 N. W. 309, 48 L. R. A. 294, 80 Am. St. Rep. 689; note L. R. A. 1917 B, 358, *et seq.*, and authorities cited on this subject. See, however, for the holding *per contra*, where the contract is for lobbying services consisting of argument addressed only to the reason of the members of the legislative body sought to be influenced, note L. R. A. 1917B, 359, *et*

*seq.*, and authorities cited on this subject. But since we have in Virginia the statute aforesaid (section 1728 of the Code), which, so far as material, provides that the board of supervisors "shall have power * * * to employ counsel * * * in any matter affecting county property where the board is of opinion that such counsel is needed" (a provision which is so broad that it undoubtedly confers upon the board of supervisors the authority to contract for the employment in question in the case in judgment), it is unnecessary for us to enter further upon the consideration of the question of whether the contract of employment on the part of the county would have been illegal but for the Virginia statute just cited, or to deal with the authorities on that subject more in detail than is done above.

We come now to the sole question which remains for our decision, and that is this:

11. Does the evidence on the subject show that the acceptance by the attorneys, respectively, of the payment of the $1,000.00 to each of them, was in execution of an accord and satisfaction which barred the demands of the attorneys involved in this case?

The question must be answered in the negative.

The circumstances relied on by the county to have the effect in question upon the demand of Mr. Lee are the following: That he accepted payment of the warrant for the expenses, issued to him in May, 1920, under the resolution of the board of supervisors of May 3, 1920, containing the stipulation to the effect that it was issued "with the understanding that the amount thereof shall be deducted from the fee of said attorneys for defending the aforesaid suit;" and that the warrant for the $1,000.00 paid him was issued to him in acceptance on the part of the county of his own proposition to the board, made at their October,

18, 1920, meeting, to-wit, "if you will give me my thousand dollars I will get out of it and won't have anything more to do with you?"

[25-26] But neither at common law nor under the statute in Virginia on the subject of an accord and satisfaction (section 5765 of the Code), was the *ex parte* stipulation in the warrant for the expenses evidence of any agreement on the part of Mr. Lee to that effect. He was not present at this board meeting; never agreed to the stipulation; promptly repudiated its binding force upon him as soon as he received the warrant, and at once gave constructive notice thereof to the county, which was equivalent to actual notice, before he presented the warrant for payment; and under those circumstances the county paid this warrant. It is true that it has been held, under certain circumstances, as is said in 1 C. J. 562, as follows: "When a claim is disputed * * * and the tender of a check or draft in settlement is of such character as to give the creditor notice that it must be accepted in full satisfaction of the claim or not at all, the retention and use thereof by the creditor constitutes an accord and satisfaction. And it is immaterial that the creditor * * * protests that he does not accept the tender in full satisfaction of the claim. If he is not willing to accept the check in full payment, it is his duty to return it." But this also is said in the same valuable work (1 C. J.) at p. 560: "Although the debtor has made his tender conditional on acceptance in full satisfaction of a larger disputed claim, he may nevertheless waive the condition and consent to the creditor receiving it on his own terms, and, when he does so, acceptance of the amount tendered does not operate as a satisfaction of the claim." The county, by the payment of the warrant after notice

of the terms on which Mr. Lee proposed to collect it, waived the condition contained in the stipulation aforesaid. The expense warrant incident, therefore, did not constitute an accord and satisfaction, or even an accord.

What occurred between Mr. Lee and the board at its October 18th meeting was an accord, under the statute on the subject, although it would not have been so at common law. But the execution of an accord, while it is in existence, is as much necessary to constitute an accord and satisfaction as the accord itself. This accord consisted in Mr. Lee's agreement to accept, not the warrant (merely a promise to pay), in satisfaction of all demands, but the money, the actual payment. (1 R. C. L., pp. 199-200.) Before the money was paid, and even before the warrant was issued, Mr. Lee withdrew his proposition to accept the $1,000 in full satisfaction, as having been made upon a misconception on his part of the reason for the conduct of the board, at which he felt incensed at the time the proposition was made, and gave express notice to the board of such withdrawal at its November 15, 1920, meeting, when he, along with Mr. Howard, asked the board to reconsider its action at the October 18th meeting, and grant a rehearing of the matter, which, as aforesaid, the board did at the November 15th meeting. Since there was never any claim on the part of the county that it did not owe the whole $1,000 to Mr. Lee for services rendered under the original contract, which did not embrace the services in question, his agreement to accept the $1,000 in full satisfaction of all of his demands was *nudum pactum*, so that he had the perfect right to withdraw his agreement at the time he did. When the board thereafter acted as it did, by the resolution

of November 15th, its action was not in execution of any accord with Mr. Lee, because that accord had been withdrawn, as aforesaid. Similarly, when, after the appeal had been taken from the last-named action of the board, of which the county had notice at the time as the statute on that subject requires, the county paid the $1,000.00 warrant to Mr. Lee, it was not in execution of any accord with him, either under the statute, section 5765 aforesaid, or at common law, because no such accord was then in existence; and this the county well knew at the time it made such payment.

[27] The circumstances relied on by the county as having the effect of an accord and satisfaction which barred the demand of Mr. Howard consist merely of his acceptance of the payment of the $1,000.00 warrant issued to him after the appeal aforesaid had been taken as aforesaid. There was no evidence before the jury that such payment was made in pursuance, either of any express agreement on the part of Mr. Howard, that it would be received in full satisfaction of his demand which is in question, so as to bring the case within the statute (section 5765), or of an implied agreement to that effect, which would leave the case stand as at common law. And, under the principle above adverted to, the county, by the payment of the warrant to Mr. Howard for the $1,000.00 after notice of the terms on which he would alone accept it, waived the aforesaid condition contained in the warrant itself. 1 C. J. 460. Hence, neither under the statute nor at common law was there any accord and satisfaction which barred the claim of Mr. Howard.

Upon the whole case, after careful consideration thereof, we are of opinion, notwithstanding the errors

above noted committed on the trial that "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been done." Hence, under the statute (section 6331 of the Code), the case will be affirmed.

*Affirmed.*

PRENTIS, J., dissenting.