## CIRCUIT COURT OF THE CITY OF ROANOKE

Geneva D. Rowlett

v.

John W. Pearsall, Trustee for
Teamsters Joint Council No. 83 of
Va. Health and Welfare Fund, et al.

June 18, 1985

Case No. (Law) 5135

By JUDGE JACK B. COULTER

Robert Lee Rowlett, who was born on August 23, 1919, was 58 years of age at the time of his death on April 13, 1978. He was a long-time employee of Hemmingway Transport, Inc., and a member of the Chauffeurs, Teamsters and Helpers Union, Local No. 161. By virtue of a collective bargaining agreement of November 10, 1952, between his union and others and Employers in the Motor Freight Industry, which included Hemmingway, and certain individual trustees, group life, accident and health insurance was provided eligible employees. The cost of this insurance was funded primarily by employer contributions paid to the Trustees who in turn submitted the premiums on the insurance to the insurance company, Connecticut General Life Insurance Company. The Trustees were the named policyholders of both the group life insurance and the disability income policies. The group life insurance policy provided for an extension of coverage and a waiver of premiums during periods of total disability, provided certain requirements were met.

In October, 1972, when he was 53, Rowlett became totally disabled and applied for disability benefits to the Trustees. The same individuals served as Trustees for both the Pension or Disability Fund and the Group Life Insurance or Welfare Fund. The Trustees approved Rowlett's application and authorized payment of $200.00 per month for the duration of his disability, the award being effective as of December 1, 1972.

In October, 1972, the Trustees stopped paying the premiums for Rowlett on his group life insurance policy, apparently because his employer had stopped remitting to them. Rowlett was never notified that the Trustees were no longer keeping his life insurance in force. The certificate of insurance in handbook form (Plaintiff's Exhibit 4) provided at page 21 that the life insurance would not terminate and would be extended without payment of premiums for one year periods if an employee's active employment was ended prior to his 60th birthday because of total disability, his disability had existed continuously for nine months, and proof was received by the Insurance Company on a yearly basis that the employee had remained totally and continuously disabled during each one year period.

Through the years 1972 to 1977, the Trustees checked on Rowlett's condition to verify his eligibility to receive his disability benefits which were continued up to the time of his death. Within two weeks of his death, on April 26, 1978, his wife, Geneva D. Rowlett, made application for the death benefits as his beneficiary under the group life insurance policy. Her claim was denied on May 31, 1978, because of the non-payment of premiums.

This suit was thereafter instituted on March 29, 1979, by Mrs. Rowlett against the Trustees for $10,000.00, the amount of the insurance, plus interest from April 13, 1978, the date of Rowlett's death. She claimed that the Trustees breached their fiduciary duties owed to Rowlett or were otherwise negligent in failing to notify him that they were no longer paying the premiums on his life insurance policy. Neither Hemmingway, Rowlett's employer, nor the insurance company are parties to the suit.

Service of process was obtained on only two of the four named Defendant Trustees, one of the unserved

Trustees, Archie B. Argabright, being deceased. The suit has nonetheless gone forward against the two trustees who were served, Don G. Wilson and Lyle R. Hazlegrove, Jr. These Defendants have filed a plea of the statute of limitations claiming that the cause of action accrued in October, 1972, when the Trustees ceased to pay the life insurance premiums; that, assuming a five year period of limitations, any claim asserted after October, 1977, would be barred; and that since the motion for judgment was not filed until March 29, 1979, the suit must be dismissed. The Defendants have also filed a demurrer claiming that the Plaintiff has no standing to sue, but this defense has not been actively advanced. No responsive pleadings to the merits have yet been filed.

An evidentiary hearing to develop facts relating to the defense of limitations was held on November 16, 1984. The Defendants had already filed a brief in support of their position on September 18, 1984. The Court then gave the Plaintiff until December 3, 1984, to submit her brief with December 17, 1984, set as the deadline for the Defendants' response and December 31, 1984, for the Plaintiff to reply if so inclined. Because of the legislative responsibilities of Plaintiff's counsel, and the statute so permitting (§ 30-5 of the Code of Virginia), this briefing schedule was modified so that the Plaintiff's brief was tendered on May 16, 1985, and the Defendant's response thereto was received on May 28, 1985.

In response to the Defendants' plea of limitations, the Plaintiff contends that the death of the insured is an essential element of the claim, that it is a "condition precedent" to the right of action, and that since Rowlett did not die until April 13, 1978, the motion for judgment, filed on March 29, 1979, was well within the proscription of any statute of limitations. Further, the Plaintiff suggests that the duty of the Trustees to pay the premiums or to notify the insured that they were not doing so was a continuing duty that was still outstanding up to the moment of Rowlett's death; and that trustees being fiduciaries have a duty to advise their beneficiary when the trust they are administering is terminated, and that until they give such notice they cannot rely on any statute of limitations or concept of laches.

The basic law in Virginia, notwithstanding a growing trend in other jurisdictions, is that the period of limitations begins to run from the moment the cause of action accrues and not from the time of the first discovery of any damages. Hence, though Dr. DeHart in *Hawks v. DeHart*, 206 Va. 810, 813 (1966), may have left a surgical needle in Mrs. Hawks's throat in the course of an operation in 1946, the fact that she did not discover the presence of the needle until 1962 foreclosed her claim. Justice Buchanan in upholding the defense of limitations noted:

> We are committed in Virginia to the rule that in personal injury actions the limitation on the right to sue begins to run when the wrong is done and not when the Plaintiff discovers that he has been damaged.

Reaffirming the decision made in *Richmond Housing Authority v. Laburnum Corp.*, 195 Va. 827 (1954), Justice Buchanan quoted from that case:

> This court, from early times, has adhered to the general rule, which is not controverted by the plaintiff, that the limitation begins to run from the moment the cause of action accrues and not from the time it is ascertained that damage has been sustained. [Citing cases.]
>     In the cases above cited the existence of the cause of action was equally as difficult of ascertainment as the cause of action in the case at bar. *The difficulty in ascertaining the fact that a cause of action exists plays no part in the general rule.* See also Burks Pl. & Pr., 4th ed., § 233, p. 394; 54 C.J.S., Limitations of Actions, Sec. 174b, p. 142; 41 Am. Jur., Physicians and Surgeons, § 123, p. 233; Anno., 80 A.L.R. 2d 368, 374. (Emphasis added).

In *Farley v. Goode*, 219 Va. 969 (1979), the strict application of limitations was relaxed because of the special circumstances of one undergoing continuous treatment. Such factor made the care due from a

dentist one of a continuing duty and the court posed the following question:

> Does the right to bring a malpractice action in tort for personal injuries accrue at the inception of continuously negligent examination and treatment or at the end thereof?

And gave the answer:

> We hold under these facts that when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for the malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

In *Farley* the principle that had been established in *McCormick v. Romans and Gunn*, 214 Va. 144 (1973), was merely being reaffirmed. Mrs. McCormick, the client, claimed that the law firm of Romans and Gunn had mishandled her accounts in the sale of her real estate; that the law firm provided continuous services from 1963 to 1967; and that because of the negligence of Gunn in not checking the partnership accounts Romans had been able to appropriate the fund to his own use. In extending the statute of limitations the Court concluded:

> As a general rule, the statute of limitations begins to run against a cause of action at the time of its accrual. *But where there is an undertaking which requires a continuation of services, the statute of limitations does not begin to run until the termination of the undertaking. Wilton v. Miller*, 104 Va 446, 448, 51 S.E. 837, 838 (1905). This special rule is applicable to a continuing agreement between attorney

and client. *Beale v. Moore*, 183 Va. 519, 525-26, 32 S.E.2d 696, 698-99 (1945). Indeed, it is particularly appropriate to an attorney-client agreement in view of the confidence and trust inherent in that relationship. *Keaton Co. v. Kolby*, 27 Ohio St. 2d 234, 237, 271 N.E.2d 772, 774 (1971). (Emphasis added).

By analogy, then, the Plaintiff argues that the Trustees in the case at bar had accepted an undertaking that required a "continuation of services" similar to that assumed by the law firm of Roman and Gunn or that of "continuous treatment" by Dr. Goode.

The basic principles upon which the defense of limitations is based and the exceptions which permit relaxation of its application, then, may be summarized as follows:

1. The limitation begins to run from the moment the cause of action accrues; not from the time it is first discovered that damages have been sustained,

2. The difficulty in ascertaining the fact that a cause of action exists plays no part in the general rule unless there is *fraudulent* concealment of the cause. No fraud is urged in the present case. This rule is well-expressed in 51 Am. Jur. 2d, Limitation of Actions, § 146 as follows:

> According to many courts, where the gist of an action is fraud concealed from plaintiff, or where there is fraudulent concealment of a cause of action, the statute of limitations does not commence to run until discovery of the wrong or of facts placing one on inquiry. *But the general rule in actions at law is that the mere fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not prevent the running of the statute or postpone the commencement of the period of limitation until he discovers the fact or learns of his rights thereunder,* for even though a person may not discover his injury until too late to take advantage of the appropriate remedy,

this is said to be one of the occasional hardships necessarily incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Thus, *the majority of the courts have adopted as a general rule the view that limitations begin to run from the date of the alleged wrong and not from the date the alleged wrong is discovered by the plaintiff.* [Emphasis added].

3. Even so, there are exceptions to the general rule where the wrong claimed has continuous characteristics such as "continuous treatment" (*Farley v. Goode*) or "continuous services" (*McCormick v. Romans and Gunn*).

4. There are other possible exceptions, not yet so identified by the Virginia Supreme Court, but recognized as the "blameless ignorance" doctrine where the Plaintiff's ignorance of the wrong, not due to his own stupidity or negligence, is the result of the Defendant's conduct short of fraud. As noted in 51 Am. Jur. 2d, *Limitations of Actions*, § 146 at page 716:

However, there is said to be no reason resting on general principle why ignorance which is the result of the defendant's conduct, and not of the stupidity or negligence of the plaintiff, should not prevent the running of the statute in favor of the wrongdoer. As a consequence, some courts recognize exceptions to the general rule, and under the so-called "blameless ignorance" doctrine the statute of limitations. has been held to run only upon discovery of the fact of the invasion of a right which will support a cause of action.

Applying these principles, then, to the case at bar we must first determine the nature of the Trustees' duty, if any, to Mr. Rowlett as to the continuation of his group life insurance upon his being terminated from employment because of total disability. Once defining that duty we must then examine to what extent "continuous treatment" or "continuous services" might

have been required. Basic to these questions is estab- lishing when any cause of action first arose. When could the Plaintiff or her predecessor have first maintained any action against the Trustees? The right accrues whenever the breach of contract or duty has first occurred unless that duty is continuous in which event the accrual continues until the duty ceases.

The duty of the Trustees is set forth in the certificate of insurance (Plaintiff's Exhibit 4) at page 21. The insurance would be extended and *not* terminated under the circumstances therein explained or *implied*:

> 1. If prior to reaching his 60th birthday, an employee is terminated because of total disability and *if the Policyholder* (the Trustees) *ceases to pay premiums*, then the insurance would be extended for as long as the employee remained totally and continuous- ly disabled, but for no more than one year.

Under these conditions the insurance coverage would have expired in October 1973, *if the Policyholder had ceased to pay premiums.*

> 2. If the employee submitted proof to the Insurance Company *prior to or within one year after the date on which the Policyholder ceased to pay premiums:*
> (a) that the total disability had existed continuously for nine months and
> (b) that it commenced prior to the employee's 60th birthday,

then the insurance would be extended without further payment of premiums for a period of one year from the date the proof was received provided the disability continued during said period. And this waiver of premium would continue for one year periods thereafter provided that annual proof of the disability was submitted, again, *if the Policyholder had ceased to pay premiums.*

Under the first condition the insurance coverage terminated after one year. Hence, if Mr. Rowlett had died prior to November 1, 1973, his beneficiary would

have been entitled to recover even though no premium had been paid. But these are not the facts and this condition is not applicable.

Under the second condition if the employee complied with the requirements imposed within the time limits prescribed, then Mrs. Rowlett would have recovered the amount of the insurance even though no premiums had been paid over the seven year period.

Both of these conditions, it must be emphasized, presuppose that the policyholder has ceased to pay the premiums. Both of these conditions are subject to the proviso "If the Policyholder ceases to pay premiums for you. . ." or "within one year after the date on which the Policyholder ceases to pay premiums for you. . ." Hence, if the Policyholder continued to pay the premiums, obviously the coverage continued. The duty of the Policyholder, then, was to continue to pay the premiums or notify the employee that the premium payment had been terminated. The first element of this duty, the payment of the premium, represented a continuous service UNTIL the decision was made to stop payment in which event the duty to notify was generated. And until notification had been given the first duty remained. Hence, until the employee became aware that the premium payments had ceased, the conditions necessary to accomplish the waiver of premium payments had not come into play. Mr. Rowlett was prevented from extending his group life insurance benefits because of the failure of the Trustees to perform their clearly implied duty to notify.

The Defendants point out that the cases relied on by the Plaintiff address the duties of the employer, not third party trustees. To much extent this is true, but the principle remains. The Trustees in the instant case were assuming certain duties normally associated with management as a result of an industry-wide collective bargaining agreement, involving several companies and several unions. The suggestion that the Trustees were not actually contributing the funds with which the premium payments were made is also irrelevant, the Trustees were the Policyholders, not the employer. This argument is also not accurate because the interest earned on the employer contributions, as well as money and property from other sources, is expressly referred to in the agreement (Defendant's Exhibit A) under

Section 7 as part of the fund which is defined as follows:

> *Section 7.* FUND. The term "Fund" as used herein shall mean the trust estate of the TEAMSTERS JOINT COUNCIL NO. 83 of VIRGINIA, HEALTH AND WELFARE INSURANCE FUND, which shall consist of all policies together with all dividends, refunds or other sums payable to the Trustees on account of such Policies, all monies received by the Trustees as Employer Contributions or as income from investments made and held by the Trustees or otherwise, and any other property received and held by the Trustees for uses, purposes and trusts set forth in this Agreement and Declaration of Trust.

The Court holds, therefore, that the duty of the Trustees to pay the premiums was a continuing duty, part of a continuous service, that did not end *until* the Plaintiff was notified that they were going to stop payment; that since the Plaintiff was never notified, the Defendants having breached this duty, the duty to pay continued up until the moment of death; and that consequently the suit of the Plaintiff, having been instituted within a year of the date of death, is not barred by any statute of limitations.

The Plaintiff's argument, incidentally, that the death of Mr. Rowlett was an indispensable "condition precedent" to making the claim is not persuasive and is not accepted. The precise claim is *not* for the death benefit under the group life insurance policy, but for damages sustained by the failure of the Defendants either to continue to make the premium payments or to notify Rowlett of their decision not to make them, a wrong done *before* Rowlett's death and for which a claim against the Trustees in the nature of specific performance could have been asserted prior to his death. The death merely brings into focus the precise measure of the damages.

The plea of the statute of limitations is, accordingly, overruled.