# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RIVERVIEW LAND CO. v. DANCE & CO.

### MARCH 29, 1900.

1. APPEAL AND ERROR—*Conflicting Evidence—Real Estate Agents—Improvements.*—Considering this case as upon a demurrer to the evidence, the verdict and judgment in the trial court cannot be disturbed. The defendants in error did not possess the power and authority claimed by them of improving property in their hands merely by virtue of their business as real estate agents, and the evidence as to their authority as general agents is in conflict.

2. PRINCIPAL AND AGENT—*Implied Powers of Agent—Case at Bar.*—There being evidence to support it, it was not error to instruct the jury in this case that "every delegation of authority, or creation of an agency, unless the extent of such authority or agency be expressly limited, carries with it the power to do all those things which are necessary, proper, and usual to be done in order to effectuate the purpose of the agency, and embraces all the approximate means necessary to accomplish the desired ends." The word "approximate" in the instruction is not more comprehensive than the usual and more suitable word "appropriate."

3. STATUTE OF LIMITATIONS—*Continuing Agency—Advances—Compensation—When Cause of Action Arises.*—As a general rule, where there is an undertaking or agency which requires a continuation of services, the statute of limitations does not begin to run against advances lawfully made by the agent in the prosecution of the undertaking or agency, or against compensation for the services of the agent, until the termination of the undertaking or agency. But if the agent has the right to require payment for such advances or compensation for services prior to the termination of the agency, or if the advances are repudiated by the principal as unauthorized or not required by the nature of the employment or agency, the statute begins to run from the time the agent has the right to demand payment for his services or advances, or, if such advances are repudiated as unauthorized, from the time of such repudiation.

4. EVIDENCE—*Endorsement of Negotiable Paper—Parol Evidence to Vary or Contradict.*—Parol evidence cannot be received to vary or contradict the legal effect of the endorsement of negotiable paper.

Error to a judgment of the Corporation Court of the city of Danville, rendered January 21, 1899, in an action of *assumpsit,* wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

*Reversed.*

The facts of the case sufficiently appear in the opinion of the court, except as to the evidence of H. W. Cole concerning the " Campbell notes." On this subject he testified as follows:

" The witness was shown the Campbell notes, 1, 2, and 3, heretofore introduced by the plaintiff, and endorsed by himself ' H. W. Cole, president,' and asked under what circumstances he endorsed said notes, to which question he answered that W. J. Dance came to him and asked him to endorse said notes as president of the company; that he declined to do so, claiming that the company had nothing to do with it; that he left Dance in the office where they were, and Dance followed him to the door and insisted upon his doing it, saying it was essential in order that he might realize upon the paper, but that the witness again refused, and told him he would lend him the money individually; that Dance then told him that would not do, that he had had notes prepared and wanted him to endorse them as president of the company, and assured him that if he would so endorse said notes there should no responsibility attach to him or the company, and he endorsed them with that understanding."

*Peatross & Harris,* for the plaintiff in error.

*Green & Miller,* for the defendants in error.

RIELY, J., delivered the opinion of the court.

About May, 1889, H. W. Cole and certain other persons associated with him purchased for speculation an unimproved parcel of land in the suburbs of the city of Danville, Va., and caused it to be divided and laid off into lots and streets for the purpose of selling the same. A map thereof as thus laid off was made, the lots numbered and priced, and the property placed by the owners in the hands of W. J. Dance & Co., real estate agents, to be managed and disposed of by them. In April, 1890, the said Cole and his associates obtained a charter incorporating them as the Riverview Land Company, and put the said real estate into the company as its capital.

W. J. Dance & Co., as the agents of the purchasers, were authorized by them to pay the expense of laying off the land into lots and streets, and of grading the streets, the cost of making a map of the land as thus laid off, and also the taxes on the property as they accrued. Upon the incorporation of the company, the property was continued in the hands of the said agents, with the same authority as to management and sale.

To promote the sale of lots, the agents caused several houses to be erected thereon, and the cost and expense incurred in their erection is the foundation of this controversy. The company denies that the agents were authorized to incur this expense.

As to the extent of the authority of the agents, the evidence is in conflict. While the defendant company denies that the agents possessed such authority, and the testimony introduced in its behalf is to that effect, Dance, the managing partner of the firm of W. J. Dance & Co., and who, upon the incorporation of the company, became its secretary and treasurer, is positive in his testimony that his firm was expressly authorized by the owners of the property to erect the said buildings. He further testified that he was fully satisfied, if the minute book containing the proceeding of the company, which was lost, could be found, that it would show the regular proceedings of the Board of Directors of the company, and the resolutions authorizing the

construction of the houses and the borrowing of the money to reimburse the agents for the moneys advanced by them in the erection of the houses, and for other purposes. It also appears in evidence that the company made deeds, which were duly executed by the said Cole as its president, to the purchasers of several of the lots upon which improvements were made by the agents, and that in the deeds the improvements as well as the land were expressly mentioned and conveyed, and their cost, added to the list price of the lots, included in the amount expressed as the consideration for the conveyances.

Considering the evidence, upon the writ of error, in accordance with the principles we are required to apply to it, the verdict of the jury being for the plaintiff, it must be held that the agents possessed the authority claimed by them, not, however, by virtue of their business merely as real estate agents, in which capacity they would possess no such authority (*Halsey* v. *Monteiro*, 92 Va. 581, and *Kramer* v. *Blair*, 88 Va. 456), but because it was specially conferred upon them. Although Dance & Co., at the time of their employment, were conducting the business of real estate agents, that fact did not prevent their being made general agents of the appellant company and of the former owners of the land in its management and sale.

Upon the trial of the case, the Corporation Court, upon the motion of the plaintiffs, gave to the jury the following instruction:

" The court instructs the jury that every delegation of authority, or creation of an agency, unless the extent of such authority or agency be expressly limited, carries with it the power to do all those things which are necessary, proper, and usual to be done in order to effectuate the purpose of the agency, and embraces all the approximate means necessary to accomplish the desired ends." '

To the giving of this instruction the defendant excepted. The

instruction is in almost the identical words of approved text-writers respecting the implied powers of agents. Mechem on Agency, sec. 311. It correctly stated the law, and the court did not err in giving it. It was specially objected to before us because of the use of the word "approximate," instead of the usual and more suitable word "appropriate." The use of the word "approximate," instead of "appropriate," which is the term ordinarily used in this connection, was no doubt inadvertent, but, however this may be, the difference in meaning of the two words did not render the instruction erroneous. Used as it was in conjunction with the words "necessary," "proper," and "usual," in defining the implied power of an agent, the effect was to restrict and not to enlarge its powers, and of this the defendant could not complain.

The court, at the instance of the plaintiff, gave also the following instruction:

" The court instructs the jury that where there is a continuing agency, in which the agent advances money for the use of the principal, the statute of limitations does not begin to run from the date of the said advances, but only from the termination of the agency, in a suit by the agent against the principal for such advances."

And the defendant asked the court to give the following instruction:

" The court further instructs the jury that so much of the account sued on in this cause as accrued and became due more than three years before the institution of this suit, unless based on some promise or obligation of the defendant company in writing, is barred by the statute of limitations," which the court refused to give in that form, but gave it with the following addition: "unless the agency of the plaintiffs was a continuing one, in which case the statute of limitations does not begin to

run until the termination of the agency." To the action of the court in giving the first of these two instructions, in refusing to give the latter as asked for, and in giving it as amended, exception was duly taken by the defendant company. The two instructions as given enunciate the same principle, that where there is a continuing agency the statute of limitations does not begin to run against advances made by the agent for the use of the principal until the termination of the agency, and may be considered together.

As a general proposition, where there is an undertaking or agency which requires a continuation of services, the statute of limitations does not begin to run against advances lawfully made by the agent in the prosecution of the undertaking or agency, or against compensation for the services of the agent, until the termination of the undertaking or agency. The law looks upon the employment as an entire contract, and regards the claim for disbursements and compensation as an entire demand to which the right does not accrue until the completion of the service, or the termination of the employment or agency. But, although the employment or agency is a continuing one, yet if the agent had the right to require payment for advances or compensation for services prior to the termination of the agency, or if the advances were repudiated by the principal as unauthorized or not required to be made by the nature of the employment or agency, the statute begins to run from the time the agent had the right to demand payment for his services or for advances, or, if the advances were repudiated as unauthorized, from the time of such repudiation. The statute begins to run whenever the right of action accrues, and such right accrues whenever the agent has the right to demand payment of his principal, and, if refused, to apply to the proper tribunals for relief. So that, although the agency be a continuing one, if the agent has the right prior to the termination of the agency to demand pay-

ment of his compensation or for advances, the statute begins to run from the time he had the right to make such demand.

There was evidence before the jury, and particularly the evidence of Dance himself, to the effect that he made assessments from time to time against the original owners of the property, and against them as members of the defendant company after its incorporation, for their respective proportions of moneys required to meet their obligations for the purchase of the property and to pay expenditures, and issued calls upon them for the payment of the same, rendering to each one, along with the calls, a statement of the company's affairs. It was error, in view of the evidence, to give Instruction No. 3, or to give Instruction No. 5, as amended, without qualification or explanation. As given, they forbid the jury to compute the running of the statute against any item in the account sued on prior to the termination of the agency, although the jury should believe from the evidence that the right to demand payment of such item accrued, or that it had been repudiated, more than three years prior to the institution of the suit. The said instructions, if given, should have been accompanied with the qualification that, if the jury believe from the evidence that Dance & Co. had the right to demand payment of the advances during the continuance of the agency and prior to its termination, the statute commenced to run from the time the right accrued to make such demand, or, if the advances, or any of them, had been repudiated by the defendant company when presented for want of authority to make them, from the time of such repudiation.

The court did not err in striking out the evidence of H. W. Cole as to the circumstances of the endorsement of the Campbell notes by the defendant company by him as its president, and as to the understanding between him and Dance as to the liability of the company resulting from such endorsement. This evidence tended directly to contradict and vary the legal effect of the written endorsement, and was therefore inadmissible.

*Citizens National Bank* v. *Walton,* 96 Va. 435; *Woodward, Baldwin & Co.* v. *Foster,* 18 Gratt. 200; *Martin* v. *Lewis,* 30 Gratt. 672; and *Bank of U. S.* v. *Dunn,* 6 Peters, 51. And, besides, the notes were offered in evidence to prove that the company, through its president, became affected, at the time of the endorsement of the notes, with notice that Mrs. Campbell had purchased from the company lots, with improvements thereon, and that Dance & Co. were making improvements for the company on its lots, and evidence as to the circumstances of the endorsement of the notes, or of any understanding between Dance and the president of the company, as to its liability upon the notes by reason of its endorsement, could not affect or impair the evidential value of the notes for the purpose for which they were introduced.

For the error in giving Instructions Nos. 3 and 5, without the qualification hereinbefore mentioned, the judgment of the Corporation Court must be reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed.*