# Richmond

## Cyrus W. Beale v. T. Justin Moore, Receiver, Etc.

January 15, 1945.

Record No. 2857.

Present, All the Justices.

The opinion states the case.

*Alexander H. Sands*, for the plaintiff in error.

*E. Randolph Williams* and *David J. Mays*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The law firm of Williams & Mullen underwent voluntary dissolution on March 1, 1934; Cyrus W. Beale was at that time one of its members. The old firm had among its accounts that of the American Bank & Trust Company of Richmond, and undertook to collect for it sundry claims. This bank account was taken over by Mr. Beale. He may be said to have inherited it. Among its items so passing was a claim against the estate of George Ameen, which had been reduced to judgment and which was a lien upon lots in Hopewell, in Prince George county, in Williamsburg, in Roanoke Rapids, North Carolina, and possibly elsewhere.

On April 13, 1936, Mr. T. Justin Moore, one of the receivers, wrote to Beale, asking him to look into and to report upon the status of this claim. Beale in compliance with this request wrote the letter of June 13, 1936, addressed to "Receivers, American Bank & Trust Company, Attention: Mr. T. Justin Moore, Receiver." He set out in detail the real estate holdings of the Ameen estate and said that he would prosecute their claim "for 30% of the amount due you," and further said: "I realize, however, your position in not desiring to pay attorneys fees until the properties that you take over have been actually sold and if you prefer, I shall be glad to go along with you upon the understanding that the properties are to be considered in my hands in place of the claims, that settlement in connection with future bona fide sales of the property are to be made by the purchasers through me and that I am to be paid the above percentage upon the sale price received from the bona fide sale of the said property when and if sold."

The trial court held that the terms set out in this letter and accepted by the Receivers constituted a binding contract in writing and that under it Beale was entitled by way of compensation to 30% of the gross amount of cash coming into the hands of the Receivers through sales made of the Ameen properties, and not, as was contended for by them, to 30% of the net proceeds therefrom.

The Ameen lots were sold and their prices appear in the record and exhibits, and as to them there is no dispute.

By order of November 26, 1943, a plea of the statute of limitations was overruled, and it was adjudged, upon principles stated, that Beale should recover $2,514.00.

Beale had claimed that there was due to him the principal sum of $2,634 on the Ameen claim, but the judgment of $2,514 he has accepted. It is contended, however, that interest should have been allowed on the principal sum decreed. That was denied; hence this appeal.

This interest on $2,634 to July 21, 1943, amounted to $610.83. Adjusted to the new principal of $2,514 and giving the Receivers thirty days in which to report sales and purchases to Beale, it approximately amounted, as of that date, to $590.83.

Should interest be paid to Beale?

It is contended that under Code, section 6259, the payment of interest was in the discretion of the court. This discretion is not arbitrary. It cannot be claimed that interest could be denied in an action on a bond due one day after date on which nothing had been paid for five years.

It was the duty of the Receivers to notify Beale of sales of the Ameen properties when sales were made; else he could not tell what was due him or what was 30% of the prices paid.

Provision covering this situation is set out in the excerpt quoted from the letter of June 13, 1936, and is again covered by this statement made by Mr. Beale when testifying:

"I want to say in connection with this Rice matter, as well as these other claims which I have submitted here, that it was represented to me by Mr. Durrett, at about the time we made that contract on June 13, 1936, that it was the Receivers' desire that I not make any further bills against the Receivers until collections were made or the properties were sold and enough money came in my hands to pay the bills, and I was directed to so act, and the result of it was, except at times when I talked it over and it was agreed that I should send a bill, that I did not send any bills thereafter unless agreed or directed."

The Receivers have themselves to blame for permitting interest to accumulate and now should pay it.

Notwithstanding the comprehensive phraseology of the statute, which if literally construed might apply to everything, this court, in the recent case of *Parsons* v. *Parsons*, 167 Va. 374, 189 S. E. 448, speaking through Mr. Justice Spratley, had occasion to hold:

"In Virginia interest is allowable on all contracts and assurances made directly, or indirectly for the loan, or forbearance of money, or other things. And it has been repeatedly held by the courts that the obligation to pay interest, when not expressly waived, is implied and begins when the debt is due and payable."

In *Tazewell* v. *Saunders*, 13 Gratt. (54 Va.) 354, Judge Moncure said: "According to our opinion, it is natural justice that he who has the use of another man's money should pay interest."

The court also gave judgment on a running account for $93.05 with interest from January 1, 1943.

There will be due to Beale 30% of whatever is received from the sale of Ameen lots yet unsold.

Mr. Beale also contends that there is due to him these sums for services rendered by him in and about these claims:

(1) H. B. Rice............................. $300.00
(2) E. S. Ryan............................. $300.00
(3) John S. Blick.......................... $195.00
(4) Frank T. West, Jr...................... $270.69
(5) E. C. Pelouze.......................... $208.37
(6) Nelson Haislip......................... $ 45.47

To each of these claims the statute of limitations has been interposed and in each instance it has been sustained by the trial court.

If one were to turn over today to some collection agency a claim due to himself from A and were to turn over to this agency tomorrow an unrelated claim due to himself from B, the appropriate statute of limitations might be invoked; but it is not this case.

The firm of Williams & Mullen was the instrumentality through which these Receivers undertook to collect bad debts and, so far as the record goes, was the only instrumentality so used. It was a continuing account and not one made up of unrelated items—all of which appears in Beale's claim of $93 made up of petty cash advanced indiscriminately in the interest of his principal.

When these Receivers were appointed for the American Bank & Trust Company of Richmond, they took over its assets and were charged with the duty of distributing them among designated beneficiaries, consisting in the main in this case of the bank depositors. This express trust they promised faithfully to perform and gave bond conditioned accordingly. The assets which went into their hands consisted in the main of cash, bonds, etc., and debts due by creditors to their bank. They were required to collect this indebtedness and to take such steps as might be expected from prudent men. If some creditor could have been made to pay and was not, and if his failure was due to the negligence of the Receivers, they would have been responsible on their bond. Of course they should have been and were allowed wide discretion. But when they acted in good faith and for the benefit of their *cestuis que trust,* they are, of course, protected, for all that was done was done in proper discharge of the trust duties which they had assumed.

It was as much their duty to pay counsel as it was their duty to pay over to the depositors the fruits of their labor. In short, this was a part of the burden which rested upon the trustees in the proper discharge of their trust duties.

The statute might as well have been pleaded against court costs. In pleading it against an appointed agent who did something which they themselves were required to do, they are in substance pleading the statute against themselves. Had they brought these suits themselves to collect these accounts, as they might well have done for they were accomplished lawyers, they would in final settlement have been allowed such compensation as seemed to the court proper.

The defendant relies upon *Riverview Land Co.* v. *Dance*, 98 Va. 239, 35 S. E. 720, where it is said:

"As a general proposition, where there is an undertaking or agency which requires a continuation of services, the statute of limitations does not begin to run against advances lawfully made by the agent in the prosecution of the undertaking or agency, or against compensation for the services of the agent, until the termination of the undertaking or agency. The law looks upon the employment as an entire contract, and regards the claim for disbursements and compensation as an entire demand to which the right does not accrue until the completion of the service, or the termination of the employment or agency. But, although the employment or agency is a continuing one, yet if the agent had the right to require payment for advances or compensation for services prior to the termination of the agency * * * the statute begins to run from the time the agent had the right to demand payment for his services or for advances, * * * ".

That is to say, the statute ran from the time when he should have made demand.

The situation in that case bears little analogy to the one in judgment. A land development was under review. The court said:

"To promote the sale of lots, the agents caused several houses to be erected thereon, and the cost and expense incurred in their erection is the foundation of this controversy. The company denies that the agents were authorized to incur this expense."

Of course as each house was built, Dance & Company had a right to demand payment; and this right was neither extended nor curtailed by the fact that they might afterwards build another house. This situation in no wise applies to a receivership and to its agents as they labor to protect and preserve the estate of an insolvent bank.

In *Wilson* v. *Miller*, 104 Va. 446, 51 S. E. 837, an agent was appointed with authority to collect debts among other duties. This agency continued from 1881 to 1898. A demurrer was interposed and overruled. The court adopted

and applied the general rule, and in support of its conclusion cited the *Riverview Land Co. Case*. It said:

"We are further of opinion that there was no error in the action of the court in refusing to apply the statute of limitations relied on by appellant. As a general rule, when there is an undertaking or agency which requires a continuation of services, the statute of limitations does not begin to run until the termination of the undertaking or agency. Wood on Limitations (Ed. 1883), sec. 123; *Rowan* v. *Chenoweth*, 49 W. Va. 287, 38 S. E. 545; *Riverview Land Co.* v. *Dance*, 98 Va. 239, 35 S. E. 720."

To the same effect see *Stafford* v. *Bishop*, 98 W. Va. 625, 127 S. E. 501. There an attorney was allowed to collect for services extending through a series of years, including independent items. For many years he charged for advice $250 a year. Of course he had the right to collect that $250 at the end of any year, but the court held this fact did not permit the owner to invoke the statute, and that the burden of limitations did not apply until the agency was terminated. In support of its conclusions is cited Wood on Limitations, 4th Ed., secs. 120-121; Elliott on Contracts, Vol. 3, sec. 2661, and 17th R. C. L. 797.

The general law on this subject is stated in 45 Am. Jur. 198:

"Claims Arising During Receivership.—It is a general rule that claims arising out of authorized transactions with a receiver or out of the conduct of the receivership, including those based on the proper costs and expenses of the receivership, and on the torts of the receiver or his agent in the administration of the receivership, are the ranking claims against the estate in receivership. Indeed, a court which appoints a receiver owes a duty to see to it that those who properly deal with him are paid their just demands. Preference of such a claim over a first mortgage or other lien prior in time, however, is *strictissimi juris*."

At page 231, it is said:

"Where an operating receivership is authorized, the expenses thereof constitute a first charge upon current income

and, under certain circumstances, upon the corpus of the property or fund in receivership."

The receivers did not want to pay out any money and are still adverse to such a course of conduct. If it were necessary to account for Beale's delay in presenting his claim beyond what has been said, this extract from his testimony presents an additional reason:

"In 1936, when I was informed the Receivers did not want to pay out any money until the receipts from the sales came in and I would be allowed what was right and proper. I don't say any fee I charged would be allowed, but I would not get any fee until the money came in; but that was the purpose and I agreed to it."

In cases like this a course of conduct has been marked out for us as far back as Deuteronomy: "Thou shalt not muzzle the ox when he treadeth out the corn."

In the petition for appeal is this statement:

"However, as the plea of statute of limitations was sustained by the court as to these items the merits or legality of the several claims was not passed upon by the court."

That petition in conclusion says:

"Your petitioner, therefore, prays * * * that interest should be allowed the petitioner on the sum of $2,514.00 as claimed, and as to such item this honorable court may enter up final judgment in favor of the petitioner as to such principal and interest; and that this honorable court may remand this cause to the Circuit Court of the city of Richmond for further proceedings to be had in regard to other errors in this petition mentioned according to its ruling upon such matters."

Since the trial court never undertook to pass upon the merits of the six claims which are in dispute, the cause should be remanded that it may do so. Counsel also asked that a special allowance as counsel fees be decreed him. He has created no fund and can only recover for services performed.

For the foregoing reasons, this cause is reversed and remanded.

*Reversed and remanded.*