869 F.2d 593
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BRAUDE & MARGULIES, PC, Plaintiff-Appellant,
v.
PIERCE ASSOCIATES, INC., Defendant-Appellee.
 No. 88-2523.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 1, 1988.
Decided: Feb. 10, 1989.
 
 Nelson Blitz (Odin, Feldman & Pittleman, P.C., Richard W. Schwartzman, Michael J. Cohen, Braude & Margulies, P.C., on brief), for appellant.
 John Hardin Young (Porter, Wright, Morris & Arthur, on brief), for appellee.
 Before WIDENER, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The law firm of Braude & Margulies, P.C., appeals from the judgment of the U.S. District Court for the Eastern District of Virginia that a contingent fee agreement entered into by the law firm and its client, appellee Pierce Associates, Inc., was terminated when authorized partners of the law firm instructed Pierce Associates to disregard the contingent fee agreement in reaching a settlement negotiated between Pierce Associates and a third party.
 
 
 2
 The findings of the district court are not clearly erroneous and they support the judgment, so we affirm.
 
 I.
 
 3
 The law firm of Braude & Margulies, specializing in construction law, had represented the mechanical subcontracting firm of Pierce Associates located in Alexandria, Virginia, on a variety of matters since the late 1970s. The law firm had always been compensated for its professional services on an hourly fee basis.
 
 
 4
 In mid-1983, the law firm began representing Pierce Associates on numerous disputes arising out of the construction of the Wilmington Medical Center in Wilmington, Delaware. These disputes, for the most part, were between Pierce Associates, which had served as the mechanical contractor on the Medical Center project, and the prime contractor, Gilbane Building Company.
 
 
 5
 Following the completion of the project, Pierce Associates requested the law firm to address several disputes it had with Gilbane, including charges of contract retention, unauthorized changed orders, and additional costs due to labor inefficiencies. In response, the law firm filed a labor inefficiency claim on September 5, 1985. The labor inefficiency claim was represented by the law firm to be worth approximately $4.8 million, while other claims against Gilbane were valued at approximately $1.9 million and were not seriously contested by the parties. The total amount of Pierce Associates' claim against Gilbane was $6,782,766.
 
 
 6
 Following the submission of the labor inefficiency claim, J. Richard Margulies, Esq., a member and officer of the law firm, and Pierce Associates' representatives discussed the possibility of altering the method of compensation for legal services from an hourly fee arrangement to a contingency fee arrangement. The hourly fee arrangement was not disturbed at this time, and there were no further discussions on the subject until May 1986. In May 1986, Mr. Stephenson, a member in the law firm, sent a letter to Pierce Associates outlining a contingency fee arrangement whereby the law firm would "be entitled to 18% of all amounts recovered, by settlement, litigation or otherwise from this date up to sixty days following the filing of a Demand For Arbitration or a Complaint in Civil Court if necessary. In the event that the matter is not concluded within the sixty day period the contingency percentage will increase to 24% of all amounts recovered."
 
 
 7
 In June 1986, Mr. Lewis Pierce, on behalf of Pierce Associates, signed a "Seen and Agreed to" provision at the bottom of Mr. Stephenson's letter. According to Mr. Pierce's testimony, the letter was signed in the belief that the new fee arrangement applied only to the labor inefficiency claim. The law firm, on the other hand, now contends that it covered the total amount of Pierce's Medical Center claim against Gilbane which totaled $6,782,776. The letter itself only indicates that it addressed the "Wilmington Medical Center Claim." While the law firm apparently anticipated providing Pierce Associates with complete legal services on this matter, it would seem that there were no substantive discussions between the parties regarding the Stephenson letter or its intended scope.
 
 
 8
 In the fall of 1986, without the presence of counsel, Pierce Associates and Gilbane entered into settlement discussions. While the law firm was available to give advice and it participated in proceedings to determine whether the dispute was subject to arbitration, the law firm was not otherwise involved in the settlement negotiations. In an effort to advance the settlement talks which had apparently stalled, Messrs. Margulies and Stephenson advised a representative of Pierce Associates, Mr. Burford, that if the contingency fee arrangement had become an impediment to settlement, Mr. Burford should "not worry about the fee arrangement," and some other fair fee arrangement would be found. All the principals in this controversy agree, according to testimony before the district court, that the effect of these conversations was the alteration of the terms of the contingent fee agreement as outlined in Mr. Stephenson's letter of May 13, 1986. However, no new terms were reduced to writing nor was a new fee or contingency percentage rate agreed upon between the law firm and the client.
 
 
 9
 Relying on this representation, Pierce Associates reached a final agreement with Gilbane in May 1987. Following the settlement, the law firm forwarded to Pierce Associates a "work in progress" report which showed that since the May 1986 fee arrangement the law firm had expended $53,158.84 in professional time and expenses. Pierce Associates sent a check, cashed by the law firm on the day it was received, for $54,000. Pierce Associates contends this was the full payment for professional services rendered, while the law firm claims it is only partial payment on the contingent fee agreement. Subsequent attempts to resolve the dispute proved fruitless. The law firm seeks a contingent fee based on a percentage of the entire settlement.
 
 
 10
 Braude & Margulies brought suit in the district court in August 1987 alleging breach of legal fee agreement. Pierce Associates in an amended answer pleaded affirmatively that the law firm had been fully compensated for time and expenses, mistake as to terms of any alternative fee arrangement, breach of the law firm's fiduciary duty, and that attempts to enforce the contingency fee arrangement were "unfair, overreaching and unconscionable."
 
 
 11
 Motions for summary judgment were denied, and a nonjury trial was conducted in the district court. The court below found that the contingent fee agreement had been terminated, thus, the law firm was "not entitled to recover under a contingent fee contract." The law firm was awarded $4,847.92 for work done by the law firm after May 1987 for which it had not yet been compensated.
 
 II.
 
 12
 Fundamental principles of contract law lie at the heart of this dispute. The issues raised by this appeal are whether the district court clearly erred in finding that a contingent fee contract entered into by the law firm and its client was no longer enforceable and whether the judgment entered by the district court adequately compensated the law firm for all of its professional services to the client.
 
 
 13
 The factual findings of the trial court sitting without a jury, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, can be reversed only if clearly erroneous. It is not our function to decide factual issues de novo. Zenith Radio Corporation v. Hazeltine Research, Inc., 395 U.S. 100, 123 (1969).
 
 
 14
 At the conclusion of the trial the district court issued its findings from the bench. The court found that as a partner in the law firm Mr. Stephenson was authorized to bind the firm to a contingent fee agreement and subsequently to terminate that agreement; the contingent fee contract was, in fact, terminated by mutual consent; quantum meruit was the appropriate method at the disposal of the district court for calculating the value of the legal services provided by the law firm for which it had not been compensated; and the reasonable value for the uncompensated services under the theory of quantum meruit was $4,847.92. It is clear from testimony in the record that all the principals to this controversy understood that the contingent fee agreement of May 1986 was changed as a result of Messrs. Stephenson's and Margulies' representation that the fee would be changed to a reduced amount if the amount of the contingent fee agreement became an impediment to a settlement with Gilbane. Pierce Associates relied on this representation in reaching a settlement with Gilbane. The district court found that the contingent fee agreement was terminated and unenforceable. Clearly, an underlying employment agreement remained in place, but no longer was compensation to be determined on a contingent basis. Pierce Associates' reasonable reliance to its detriment on the law firm's representation that the original contingent fee agreement would be reformed bars, on grounds of equitable estoppel, any assertion that the original contingent fee agreement must be enforced. See Dominick v. Vassar, 367 S.E.2d 487, 489 (Va.1988) (under Virginia law the elements necessary to establish equitable estoppel are representation, reliance, change of position and detriment).
 
 
 15
 There were no substantive discussions between the parties about the precise terms and scope of the agreement when the contingent fee agreement was entered into, nor were there substantive discussions concerning the terms of the reformed agreement when the law firm told Pierce Associates not to let the fee agreement impede settlement negotiations. Nevertheless, there was substantial evidence before the district court which reasonably led it to conclude, as a matter of fact, that all the individuals involved, with the possible exception of Mr. Margulies, understood and believed the contingent fee agreement would no longer apply and should be disregarded. Thus, the district court's finding as to termination is amply supported by the testimony of the parties engaged in negotiating fee arrangements between the law firm and Pierce Associates.
 
 
 16
 After finding that the contingent fee agreement was no longer in effect, the district court held that the law firm was entitled to recover for the reasonable value of uncompensated legal services performed after May 1987. Under the relevant case law in Virginia, in the absence of an agreement to the contrary, arrangements for professional services are appropriately valued on quantum meruit. County of Campbell v. Howard, 133 Va. 19, 112 S.E. 876 (1922); Wood v. Carwile, 231 Va. 320, 343 S.E.2d 346 (1986). There was nothing in the record mandating any method of fee calculation for the uncompensated services of a law firm other than quantum meruit as applied by the trial court.
 
 
 17
 In determining the value of the work done, Virginia courts have instructed that consideration should be given, inter alia, to the amount and character of the services rendered; the labor, time and trouble involved; the professional skill and experience called for; and whether or not the fee is absolute or contingent. County of Campbell, 133 at 51, 112 S.E. at 885.
 
 
 18
 While these are factors which a court should consider in the awarding of attorney's fees in a case such as this, the relative weight to be given these factors as well as additional considerations are within the sound discretion of the trial court. The district court in the case at bar simply multiplied the number of uncompensated hours of legal services performed by the law firm's hourly rate. The district court relied on the available evidence submitted by both parties as to the time expended by the law firm which was still uncompensated. The court's calculation is appropriate since the law firm's work records were maintained on an hourly basis and all prior dealings between the parties were handled on an hourly basis. Moreover, the special factors outlined in County of Campbell, supra, such as the law firm's recognized expertise in construction law, which the law firm complains were ignored by the district court, were reflected in the hourly fee rate routinely charged by the law firm.
 
 III.
 
 19
 We hold, therefore, that the facts and circumstances of this case amply support the district court's factual findings and judgment that the contingent fee agreement was no longer enforceable and the law firm was entitled to recover, pursuant to a theory of quantum meruit, for the value of its services on an hourly rate.
 
 
 20
 Accordingly, we affirm the judgment of the district court.
 
 
 21
 AFFIRMED.